**FANT MILLING CO. v. MAY et al.**

**No. 14315.**

Court of Civil Appeals of Texas. Dallas.

May 11, 1951.

Rehearing Denied June 8, 1951.

445

Gillespie & Gillespie, Sherman, for appellant.

Will R. Wilson, Jr., Dist. Atty., Harold W. McCracken, Rufus N. McKnight, Jr., and Billy B. Joiner, Asst. Dist. Attys., all of Dallas, for appellees.

YOUNG, Justice.

This suit was filed by appellant against Sheriff Bill Decker of Dallas County and surety on his official bond under Art. 3825, Vernon's Ann.Civ.St., seeking to fix liability for failure and refusal to levy on certain merchandise and fixtures described as the property of judgment debtor, Melvin May. Before making return of nulla bona on the execution in question, the Sheriff made request on the judgment creditor (appellant) to post an indemnity bond, which was refused. The appeal is by Fant Milling Company from adverse judgment rendered on trial to the court.

The material facts and issues involved are sufficiently reflected in findings and conclusions duly filed by the trial court, viz.: "(1) That on the 12th day of January, 1950 plaintiff, Fant Milling Company, a corporation, recovered judgment against Melvin May, dba Dallas Feed Company, said judgment providing, among other things, as follows: 'It is therefore ordered, adjudged and decreed that the plaintiff, Fant Milling Company, do have and recover of the defendant, Melvin May, doing business as Dallas Feed Company, its damages in the present sum of one thousand two hundred and thirty-eight and 36/sand two hundred and thirty-eight and 36/100 ($1,238.36) dollars plus interest thereon at the rate of six (6%) per cent per annum from the 3rd day of April 1949 plus

its costs in this cause expended, and that defendant, Melvin May, doing business as Dallas Feed Company, take nothing by his cross action herein filed, and that as to such cross action Fant Milling Company go hence with its costs without day; for all of which let execution issue.' And that said judgment is final, no appeal therefrom having been perfected during the time allowed by law. (2) That on February 2, 1950 plaintiff, Fant Milling Company, a corporation, caused to be issued, and there was duly issued, out of this Court a writ of execution upon and pursuant to said judgment above described, which writ of execution was returnable in 90 days and the same was duly delivered to the defendant, Bill Decker, Sheriff of Dallas County, Texas, on the 3rd day of February, 1950, and the following return was made by him, through his deputy, to wit: 'Came to hand 3 day of Feb. A.D. 1950 and returned on the 26 day of April, A.D. 1950 no property found in Dallas County belonging to defendant subject to execution. Fee $1.00. Bill Decker, Sheriff Dallas County, Texas By: /s/ W. B. Bass, Deputy.' (3) The defendant Bill Decker, Sheriff of Dallas County, Texas, through his deputy, W. B. Bass, immediately upon receipt of said writ of execution went to the premises known as 602 North Fleming Street in the City and County of Dallas, Texas and found a Melvin May in possession of a small feed store with old fixtures therein of an estimated value of about Sixty ($60) Dollars, and a small stock of feed, the estimated value thereof being between Two Hundred ($200) and Three Hundred ($300) Dollars; that when the said Bass asked the said Melvin May who the owner of said feed was the said Melvin May told Bass that the said feed was placed therein on a consignment basis. (4) That after said visit between the said Bass and the said Melvin May, the defendant Bill Decker, in a conversation with said Melvin May, was advised by May that the feed in said premises, in his possession, was purchased upon a consignment basis, delivery thereof being from day to day, and that the said feed was thus purchased from the Universal Mills and Burrus Feed and Elevator Company, which facts were later verified by the said Bill Decker in conversations with officials of the said Universal Mills and Burrus Feed and Elevator Company. (5) That the real estate and fixtures of the premises at 602 North Fleming Street, Dallas, Texas, in possession of the said Melvin May were found by the defendant, Bill Decker, to have been heavily mortgaged. (6) That after the facts hereinabove stated in paragraphs (3), (4) and (5) herein were ascertained, the defendant, Bill Decker, communicated with the attorneys of record for the Fant Milling Company, a corporation, advising of the circumstances and requesting that an indemnity bond be executed by the said Fant Milling Company in favor of the said Bill Decker indemnifying him against all losses to all parties owning or claiming title or an interest in and to said feed and fixtures hereinabove described, and that the said Fant Milling Company failed and refused through their attorneys of record to furnish the requested indemnity bond and insisted upon the defendant, Bill Decker, levying upon said fixtures and feed and, thereupon, the said Bill Decker, through his deputy, W. B. Bass, made the return on the said writ of execution as shown hereinabove. (7) That the Fant Milling Company, a corporation, at the hearing upon its motion for damages against the defendant, Bill Decker, and his bondsmen, introduced the following evidence: (a) the judgment of this court in the above entitled and numbered cause, including the portion hereinabove described in paragraph numbered 1 hereof; (b) the writ of execution duly issued by the Clerk of this Court on February 2, 1950, the return thereon being the same as the return hereinabove quoted in paragraph 2 hereof; (c) elicited from a single witness, an employee of the Fant Milling Company, a corporation, that he had been by the premises known as 602 North Fleming Street, Dallas, Texas about a year prior to the date of the motion hearing and that he saw some feed in the premises and that the said defendant, Melvin May, was in the building located at said address but that the witness had no conversation with the

said Melvin May at that time or any subsequent time, and the witness could not testify as a positive fact that the feed which he saw in the building at said address belonged to the said Melvin May; and that after the plaintiff had introduced the foregoing evidence and testimony, he rested his case. Whereupon the defendant, Bill Decker and the defendant, Great American Indemnity Company, through their attorney, moved for judgment on the ground that the plaintiff had not established a prima-facie case and the said defendants, under an agreement with the court whereby they should not be considered to have waived their right to judgment, proceeded to introduce their evidence showing the other matters of fact as hereinabove found by the court. Conclusions of Law: (1) That the defendant, Bill Decker, was apprised of such facts with regard to the ownership of or the assertion of an interest in the feed and fixtures found in the building at the premises known as 602 North Fleming Street, Dallas, Texas by third parties to justify his conclusion that there existed a potential liability if he levied upon the alleged feed and fixtures described in plaintiff's motion herein and that he was justified under the facts and the law to demand of the plaintiff, Fant Milling Company, a corporation, an indemnity bond indemnifying him for any damages for which he might be found liable as a result of the levy upon, seizure and sale of the said alleged fixtures and feed. (2) Since the Fant Milling Company refused to comply with the request of defendant, Bill Decker, to furnish him an indemnity bond, he was justified in refusing to make a levy upon the alleged feed and fixtures at 602 North Fleming Street, Dallas, Texas and the plaintiff cannot recover damages for his alleged failure to make a levy thereon. (3) The plaintiff, Fant Milling Company, a corporation, failed to establish a prima-facie case in that it did not prove that there was property in the hands of the said Melvin May at any time between February 3, 1950 and April 26, 1950 which belonged to him and which was subject to forced sale under said writ of execution. (4) Since the defendant, Bill Decker, was not liable for failure to make a levy and forced sale of said property, the defendant, the Great American Indemnity Company, surety on the official bond of the said Bill Decker, is not liable to the plaintiff, the Fant Milling Company, a corporation."

Specifically, it was the testimony of George Lake, appellant's witness and employee, that he was actually in the store of Melvin May about a year previous to the trial, passing by several times in early part of 1950, observing that the store, with fixtures and stock of feed, was open for business. Sheriff Decker stated on cross-examination that he did not check the County Court records for consignment contracts, merely for mortgages,—testifying: "I don't know whether it was on open account or how it was sold to him. It was consignment or open account, I don't know. He said that they sent him enough merchandise to do business every day, now that is his statement. I am not vouching for it." In the same connection Deputy Bass testified: "Q. What terms were they selling the merchandise on, consignment or—A. That is right, from week to week and month to month."

From the view we take of appellant's case as made, same may be fully disposed of by a discussion of its points 1 and 6, complaining of the trial court's error "in holding that Bill Decker, Sheriff of Dallas County, was entitled to an indemnity bond before levying writ of execution on stock of goods, wares and merchandise daily exposed to sale, which was in the possession of the judgment debtor and which, by the defendant, Bill Decker's, own evidence, were sold to said judgment debtor on open account by general creditors," and "in concluding that the defendant, Bill Decker, was not liable for failure to make levy and sale of the property of the defendant in execution, and that, since he was not liable, his surety, Great American Indemnity Company, was not liable with him."

■ The plaintiff in execution cannot be required to indemnify the officer in a levy on real property; Bryan v. Bridge, 6 Tex. 137; Illes et al. v. Fitzgerald, 11 Tex. 417; for the reason that he will not thereby be subjected to a suit for damages. Wilson v.

Dearborn, Tex.Civ.App., 174 S.W. 296. "* * * With respect to chattels, however, the law has always recognized that the officer should be conceded the right to protect himself from a potential liability, notwithstanding that the chattels are in the possession of the debtor and are apparently subject to levy under the writ; and in the case of an attachment this right is recognized by statute. The officer is therefore within his rights in requiring indemnity where the defendant in the writ claims that the chattels are exempt from execution, or where some third person claims chattels that the officer believes to be available for levy under the writ, or where there exists some other ground for apprehending that a claim in trespass or conversion will follow a seizure of chattels specified in the writ or any property under a writ authorizing a levy on the debtor's property generally. Moreover, if a doubt should arise as to his right to proceed to a sale of chattels, the officer may exact indemnity after seizure and before sale. As has been pointed out, any other rule would require the officer to determine the ownership of the chattels at his peril, and the true effect of R.S. Art. 6873 requiring the sheriff to execute all process and precepts directed to him by legal authority is not to abrogate the ancient practice in this matter." 38 Tex.Jur. 512, sec. 71.

■ The text just quoted has support in numerous Texas decisions, under which holdings the officer is conceded a right of indemnity upon reasonable ground of apprehension that a levy would result in a claim against him for wrongful seizure. In Seasongood v. Campbell, Tex.Civ.App., 49 S.W. 407, it is stated without qualification that the officer had the right, before levying on personal property, a stock of goods, to require indemnity.

■ But appellant argues that the property in question constituted "goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business" of such Melvin May, within purview of Art. 4000, Vernon's Ann.Civ.Sts., against which no lien could attach; and this, together with statements of the storekeeper that same was purchased from named

wholesalers on open account, fixed ownership in May; and, in consequence, properly subject to execution. On the other hand, we must take a realistic view of the record as a whole and of the situation actually confronting the officer, i.e., notice of the likelihood that the merchandise was being handled on a basis of consignment. Testimony to the latter effect, though meager, was sufficient, we think, to render applicable the general rule that "if a sheriff to whom process has been given for service entertains a doubt as to the title to the property to be levied on, he may demand indemnity, and is under no obligation to act unless it be given." 24 R.C.L. 972; Pappe v. Law, 169 Okl. 15, 35 P.2d 941, 95 A.L.R. 943. "If personal property were taken, the sheriff, if he doubted the title of the defendant in execution, might demand a bond of indemnity from the plaintiff before sale. * * *." Bryan v. Bridge, supra.

■■ The only estimate concerning value of the May fixtures and feed was $60 for the first item and, for the other, between $200 and $300. (See findings above, paragraph 3.) Even if we be mistaken in our conclusions just reached,—in other words, that the sheriff's demand for indemnity was unwarranted—his liability would not extend to full amount of appellant's judgment, interest and costs (as is contended), but would be limited rather to a maximum sum of $360. "According to a literal reading of the statutes, for failure to levy or sell, or for failure to return an execution, the officer and his sureties are liable for 'the full amount of the debt, interest and costs.' However such an interpretation has been rejected in favor of construing the statutes, according to the probable intent of the Legislature, by allowing a *recovery of the actual loss accruing from the officer's breach of duty;* that is to say, if the value of the property that might have been levied on is less than the debt, interest and costs, then such value is the amount for which the plaintiff in the writ is entitled to judgment on the motion. However, the burden of pleading and proving that less than the full amount of the debt, interest and costs could have been recovered by diligence in executing the writ is upon

the officer. * * *." (Emphasis ours) 38 Tex.Jur. 472, sec. 36. Appellant relies largely on Hackler v. H. Kohnstamm & Co., Tex.Civ.App., 227 S.W.2d 347, recently decided by this Court, where there was no request for indemnity. We do not regard this case as controlling of the instant facts, other than so far as may be relevant to the alternative views expressed in this paragraph.

On the record as a whole, however, we are in harmony with the foregoing conclusions of the trial court; accordingly the judgment in question must be affirmed.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

Inability to agree with my associates in the holding made in this cause imposes the statutory duty of entering of record this statement of my grounds for dissent.

The statute, Art. 3825, Vernon's Ann. Civ.Sts., provides: "Should an officer *fail or refuse to levy upon or sell any property subject to execution,* when the same might have been done, he and his sureties shall be liable to the party entitled to receive the money collected on such execution for the full amount of the debt, interest and costs, to be recovered on motion before the court from which said execution issued, five days previous notice thereof being given to said officer and his sureties." (Emphasis supplied.)

This article is intended to afford redress for injuries the plaintiff in execution suffered for the failure or refusal of the officer *to levy upon or sell* any property subject to execution, and as a penalty for such failure or refusal. If the plaintiff suffered no injury, to be sure, the officer and his sureties are not liable. Chernosky v. Abney, Tex.Civ.App., 130 S.W.2d 904; B. F. Goodrich Rubber Co. v. Valley Plumbing & Supply Co., Tex.Civ.App., 267 S.W. 1036. Solvency or insolvency of judgment debtor at time of sheriff's levy is a judicial question and not one for determination by the officer in levying upon property of the debtor. Burkett v. Simmons Hdw. Co., Tex.Civ.App., 52 S.W.2d 675. Nor is the officer justified in refusing to make levy because, forsooth, the debtor ex parte tells him that the property in his possession is mortgaged, or some other party has a lien thereon, or that the property does not belong to him, or that the property in his possession is not subject to execution. It is the duty of the sheriff or officer having the writ of execution for sum of money, to make the levy, and a refusal to do so makes him and his sureties liable under his official bond. Hackler v. H. Kohnstamm & Co., Tex.Civ.App., 227 S.W.2d 347, 348, opinion by this Court.

It will be seen in the Hackler case that the Sheriff of Camp County, Texas, failed to make levy on personal property belonging to and in possession of the debtor, the sheriff making returns on the execution as follows: "This execution came to hand 5-21-11 A. M. I investigated Geo. Collins place several times and I found at no time any thing to leavy on. About $10.00 or $12.00 worth of paper and washing powder. He has sold out and moved from here. H. F. Hackler Sheriff Camp Co." The evidence in that case, as shown in the opinion, is that the debtor Collins had in fact some personal property subject to execution, claimed by him to be heavily mortgaged, as in the case here, and that all of it was exempt to him as the head of a family, he being a married man with his wife working in the laundry business with him. The debtor afterwards sold the laundry business, satisfied the liens against his property, and, in addition, received $3,000 in cash. In that opinion we said: "Articles 3825 and 3826 are somewhat penal in nature and are to be strictly followed in order to sustain a judgment. J. M. Radford Grocery Co. v. Owenby, Tex. Civ.App., 34 S.W.2d 385; Ellis v. Blanks, Tex.Civ.App., 25 S.W. 309; a complete defense to the action consisting of proof that *no money* could have been collected by * * * use of proper official diligence. If, on the other hand, it is developed by the testimony *that money could have been realized by a prompt and diligent handling of the process by the official, a statutory liability would follow in full amount of the judgment debt, interest, and costs;* and the

articles in question (3825, 3826) are to such extent punitive." (Italics supplied.)

In our conclusion we quoted from the opinion in B. F. Goodrich Rubber Co. v. Valley Plumbing & Supply Co., supra: "Our Supreme Court has declared that the primary object of this statute is to give compensation to the plaintiff in execution for any injury suffered by him on account of the default of the officer, and that, when no such injury has been sustained, no right to recover exists. The failure of the officer to discharge his duty in the premises renders him and his sureties prima facie liable to the plaintiff in execution for the full amount of his debt, interest, and costs, and the burden is on the officer to overcome such prima facie case by showing that nothing could have been collected on such execution by proper official diligence. (Citing authorities.) Mere insolvency of the defendant in execution, within the ordinary meaning of that term, is not sufficient to absolve the officer. He should show that there was no property belonging to the defendant subject to execution within his official jurisdiction out of which plaintiff's judgment, or any part thereof, could have been made. Griswold v. Chandler [22 Tex. 637], supra; Ellis v. Blanks, supra; Hale v. Bickett, 34 Tex.Civ. App. 369, 78 S.W. 531."

We also cited with approval the opinion of this Court in Richardson, Sheriff, et al. v. Johnson-Layne Coffee Co., Tex.Civ.App., 252 S.W. 253, wherein is said: "This statute is very sweeping in its terms and makes the officer and his deputies liable to the party entitled to receive the money collected on the execution for the full amount of the debt on the officer's failure to return the execution. Its terms show that it is predicated on the proposition that the officer is made liable in the summary manner prescribed by the statute on his ability to have realized money on the execution had he been prompt in the performance of his duty when the execution was placed in his possession. If no money could possibly have been realized on the execution, it necessarily follows that no liability would attach to the sheriff and his bondsmen for the failure to make the return. This doctrine is announced in the case of Hale et al. v. Bickett, 34 Tex.Civ. App. 369, 78 S.W. 531. * * *"

Furthermore, we quoted (in the Hackler case) from Smothers v. Field, Thayer & Co., 65 Tex. 435 (Syl. 3) as follows: "The mere fact that there are prior liens upon the property of a defendant in execution is no justification for failure, on the part of the officer, to levy the writ. The defendant's equity of redemption is subject to his debts, and the plaintiff in execution has the right to have that sold for what it will bring, and the proceeds applied to the payment of his judgment."

In the case at bar the majority seems to pronounce a different conclusion of law on practically the same facts as in the above Hackler opinion, in that our decision there reached has no controlling effect upon this Court in the instant case. A casual glance at our Hackler opinion forcibly evidences direct conflict with the majority in this case. The evidence is not materially different. The Sheriff of Camp County, as did the Sheriff of Dallas County, failed to make levy on property subject to execution; the debtor sold out, and the creditor was injured because of the failure of the sheriff to discharge his official duty; hence the statutes, Arts. 3825 and 3826, must be held of equal application to all sheriffs or constables in the State of Texas, appertaining to their official duty. The statute affords no excuse to any officer, in whose hands has been placed a writ of execution directing him to levy upon property of the debtor, in his failure of the duties encumbered upon him by law. A judgment creditor is under no statutory requirement to indemnify such officer in the discharge of such duties. Manifestly it would be a dangerous and unwise precedent of extra-judicial legislation to require creditors to indemnify by bond the levy of execution to enforce collection of a money judgment, thus allowing the officer to whom the execution was sent a wide berth in the exercise of judicial discretion to make levy at will, regardless of incurring liability to the creditor and his sureties for any wrongful execution. The officer, in assuming the responsibilities of his office,

should know, and the law imposes upon him such knowledge, of the risks he takes in the discharge of the duties of his office. A levy of execution for stated sum of money, unlike writs of attachment or sequestration directed against certain designated properties, does not impel the creditor to give indemnity bond to secure the officer in making such levy.

Article 287, R.S., provides: "Whenever an officer shall levy an attachment, it shall be at his own risk. Such officer may, for his own indemnification, require the plaintiff in attachment to execute and deliver to him a bond of indemnity to secure him if it should afterward appear that the property levied upon by him does not belong to the defendant."

Article 6843 (repealed by Rules of Civil Procedure), now Rule 698, T.R.C.P., provides: "No writ of sequestration shall issue until the party applying therefor has filed with the officer authorized to issue such writ a bond * * * with two or more good sureties to be approved by such officer, conditioned for the payment of all damages and costs in such suit in case it shall be decided that such sequestration was wrongfully issued."

Rule 622, T.R.C.P., provides: "* * * The execution and subsequent executions shall not be addressed to a particular county, but shall be addressed to any sheriff or any constable within the State of Texas."

Rule 630, supra, provides: "When an execution is issued upon a *judgment for a sum of money*, or directing the payment simply of a sum of money, * * *. It must require the officer to satisfy the judgment and costs out of the property of the judgment debtor subject to execution by law."

Rule 637, id., provides: "When an execution is delivered to an officer he shall proceed without delay to levy the same upon the property of the defendant found within his county not exempt from execution, unless otherwise directed by the plaintiff, his agent or attorney. * * *"

Rule 643, id., provides: "Goods and chattels pledged, assigned or mortgaged as security for any debt or contract, may be levied upon and sold on execution against the person making the pledge, assignment or mortgage subject thereto; * * *."

It will be observed from the foregoing statutes and Rules of Civil Procedure that neither the Legislature nor the Supreme Court in promulgating the Rules have imposed upon creditors in final judgment for money the hazard of posting indemnity bond to secure execution of statewide process by officers of whom they know nothing, or the safety of reliance upon them in the execution of the process. The officer, upon on receipt of the writ of execution, is compelled to "proceed without delay to levy" the writ upon property of the debtor, and no alternative is afforded him as to excuse him in his failure to make the levy. An ex parte statement of the debtor that he does not own the property or that some third party has a lien or consignment and conditional sales contract in reference to property in the creditor's possession, is no reason in law or fact for refusing to execute the process of a court of competent jurisdiction.

The record evidence in this case shows that the writ of execution was issued upon a judgment for a sum of money, interest and costs (a final judgment) sent to the Sheriff of Dallas County, received by him on February 3, 1950, and returned "nulla bona" on April 26, 1950. During this period of time the defendant in execution, Melvin May, was open for business as Dallas Feed Company and had a stock of goods and merchandise consisting of stock feed, medicines, poultry medications, stock remedies and the like, and store fixtures. George Lake, witness for the plaintiff in judgment, testified, and his testimony is not controverted, that the defendant debtor, May, had been doing business in Dallas continuously since the latter part of 1945 and was open for business during all that time with stock of merchandise and fixtures in his store; that he (witness) was in the store approximately a year before the trial of this cause, passed the store on April 15, 1950 when the execution was in the hands of the sheriff and saw the fixtures and

stock of goods in the store; couldn't detect any change in passing.

Mr. Bass, as deputy under Sheriff Decker, received the writ of execution on February 3, 1950 and soon thereafter called upon the defendant in judgment at his place of business and found that he had a small feed store, and had some grain. Over appellant's objection the deputy was permitted to testify that he inquired about the grain, as to whether it was his (May's) grain, or whose grain it was;

" * * * Well, he told me that he was buying it through two different concerns * * * Burrus Mill and Universal Mills at Fort Worth. * * *

"Q. Now, did you go and talk to Burrus Mill and Universal Mills? A. Yes, sir.

"Q. And what did you find from talking to them? A. I found out that he is buying feed * * * They stated to me that they were selling him feed on monthly basis, Burrus Mill and Universal Mills * * *

"Q. All right, that was on a week-to-week basis? A. Week-to-week, on some occasions it was week-to-week, and some day-to-day and some mouth-to-mouth * *

"Q. Now, did you find anything—How much feed did you find in there at any time that you were not there? A. I would say that on three different occasions that I was out there, it was less than $300 worth.

"Q. That is about all he had in it? A. That is right, other than—except some few fixtures.

"Q. And what was the value in your opinion of the fixtures? A. Roughly, it would be around $50 or $60."

On cross-examination, the deputy testified that he got statements which were offered in evidence from Burrus Mill and Universal Mills on Thursday May 4, after the return of the writ of execution on April 26.

"Q. Did you check with the office of the County Clerk to see whether any consignment contract was recorded? A. No, sir.

"Q. And you didn't make any attempt to find out, other than what Mr. May told you? A. That is all.

"Q. Now as to this $50 or $60 worth of fixtures, did those belong to May? A. I presume that they did.

"Q. They were his property? A. Yes, sir.

"Q. They weren't subject to any other claims? A. Well, that I don't know.

"Q. You didn't check to see? A. No, sir."

At this juncture of the deputy's testimony, the plaintiff offered in evidence a letter addressed to plaintiff's attorney of date February 28, 1950, as follows: "Re: Melvin May, d/b/a Dallas Feed Company. Dear Sir: I have contacted the above subject, and he says that he cannot pay this judgment off now. He also stated that he will pay this off in the near future. He does not have anything in the way of merchandise to levy on, as he buys it and pays for it as he can. His property is so heavily mortgaged that we could do nothing along this line. Advise me by return mail as to what you want me to do regarding this matter. Sincerely yours, Bill Decker, Sheriff /s/ Bill Bass by Bill Bass, Deputy."

Then, in response to the above letter, on March 2, 1950, plaintiff's attorney replied: " * * * Your letter of February 28, 1950 indicates that Mr. May has a stock of merchandise on hand which constitutes goods daily exposed to sale within the terms of Article 4000 of the Revised Civil Statutes of Texas and it is our desire that this stock of merchandise be levied on in satisfaction of judgment at the earliest possible date unless Mr. May can obtain cash with which to pay the full amount of the judgment and the costs. Yours truly, Gillespie & Gillespie."

Sheriff Decker testified that his deputy, Mr. Bass, talked with him about the execution received by his office and, after talking to him, he went by Mr. May's place of business and " * * * while in Oak Cliff I stopped at May's store, just for a little personal survey to determine what was there, and what little knowledge I

have of feed, I found some couple hundred dollars worth of merchandise in there and a few 2 x 4's and large lard cans, a desk, and an old beat-up typewriter was the extent of his holdings here in the store.

"Q. All right, at that time did you know that he did have these accounts with Universal Mills and Burrus Mill? A. I did not know about the Universal Mills, no, I knew that he was very heavily involved with the Burrus Mill.

"Q. All right, did you request an indemnity bond of Mr. Gillespie (plaintiff's attorney) after you found out about that? A. I did in our office in Dallas.

"Q. All right, I believe these bills they questioned Mr. Bass about, these statements rather, those were obtained recently, were they not? A. They were obtained for the purpose of bearing out our statement that the man was heavily involved.

"Q. And these are the statements which you obtained from them after the suit was filed? A. Yes, sir * * *." (At this juncture the statements from Burrus Mill and Universal Mills were offered in evidence, showing merely open accounts with the debtor May, d/b/a the Dallas Feed Company.) On cross-examination, the Sheriff testified:

"Q. Mr. Decker, you say the merchandise that Melvin May had from the Burrus Mill and Elevator was on open account? A. I don't know whether it was on open account or how it was sold to him. It was consignment or open account, I don't know. He said that they sent him enough merchandise to do business every day, now that is his statement. *I am not vouching for it.* (Emphasis supplied)

"Q. Did you check the records of the County Clerk for anything recorded? A. I sure did and checked the records of the tax assessor too, and found a $3,500 mortgage on a piece of property over there in which he is doing business, payable $50 a month to the Grand Avenue State Bank, which includes the fixtures and everything in that store.

"Q. Did you find any recorded consignment contract? A. I didn't, I didn't check for recorded consignment contracts, I did not. I checked the mortgage, that was all. * * *

"Q. You did not levy on what you found in the store while you were there? A. I did not, as I stated to you in my office, I would have to have an indemnity bond."

There being no statute or rule in this State requiring a judgment creditor to post an indemnity bond to enforce by writ of execution a money judgment, before levying on property of the judgment debtor, the issue here involved is a matter of far-reaching effect, both as to rights of creditors and of the officer making the levy. The view taken of such requirement in other jurisdictions may be of aid in determining the issue.

In 47 Am.Jur., p. 923, sec. 144, Text— Sheriffs, etc., Right to Demand Indemnity, etc., the author says (supported by numerous authorities): "While under certain statutory provisions the sheriff or constable is deemed to have an unqualified right to require an indemnifying bond before he makes levy, without regard to whether his demand for a bond is reasonable, and although no claim to the property has been asserted by a third person, according to most authorities he cannot arbitrarily demand an indemnity bond from the judgment creditor in every case, but is entitled to such bond only where an adverse claim is actually made to the property upon which he has levied or proposes to levy, or where such circumstances exist as would justify a prudent person in apprehending litigation relative thereto; and in demanding the bond the officer must act in good faith. In the absence of any claim to the property by a third party, the right to demand an indemnity bond is generally denied. If property levied on by an officer under execution is in the possession of the defendant, it is presumptively his, and the officer, in the absence of notice of anything to rebut such presumption, has no right to demand indemnity or refuse to make the levy, and no right to release the property after making the levy upon the refusal of the plaintiff to indemnify him."

In Mayfield Woolen Mills v. Lewis et al., 89 Ark. 488, 117 S.W. 558, the Supreme Court of Arkansas, in a situation analogous as here, held (Syl. 1): "At common law an officer was bound to levy execution on defendant's property, whether claimed by third persons or not, and must show that the property was exempt to excuse a failure to levy, nor could he require a bond for indemnity in case the property was actually owned by another, but by statute and the practice of the courts, he may refuse to levy, unless indemnity is given, whenever a third party actually claims the property, or the circumstances justify a prudent person in apprehending litigation."

Even if it was the law of Texas that the sheriff, or constable, may require indemnity bond before levy or execution upon reasonable grounds, the mere fact that third parties had a claim against the property in possession of the judgment debtor is not sufficient to justify a demand for indemnity bond. In the case here, there is no showing that there was an existing claim or lien on the judgment debtor's stock of goods, fixtures, or the building in which the debtor was doing business. The only evidence introduced is the ex parte statement of the debtor that the goods in his store were on consignment, and the testimony of the sheriff that the Grand Avenue State Bank had a mortgage on the building, stock of goods and fixtures. Article 5489, R.S., provides: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. * * *"

The Supreme Court of Alabama, in Planters' Chemical & Oil Co. v. Daniel, Sheriff, 209 Ala. 363, 96 So. 424, 427, had for review a situation similar to the one in the instant case. The judgment creditor obtained a writ of execution and placed it in the hands of the sheriff for levy. The sheriff refused to make the levy without an indemnity bond. The defendant in execution was apparently doing business as a general merchandise store, heavily involved with other creditors, and had a stock of goods open for sale, of all which the sheriff had actual knowledge. The Supreme Court of that jurisdiction said: "* * * Nothing less than a reasonable doubt whether the stock of goods belonged to defendant in execution, or whether it was subject to levy and sale, will justify a demand for an indemnity bond. Defendant in execution was in possession of a stock of goods in a place where, as we have said, he had been doing business for several years, as the sheriff knew. In the absence of anything to rebut the presumption of ownership and liability, he had no right to refuse to make the levy, nor could his duty to make it then and there be avoided or evaded, on the ground of a threat that meant nothing, * * *."

With all due respect to the opinion of the majority, and the high regard we all have for the Sheriff of Dallas County, which he deserves, I must respectfully enter this statement as my conviction in the discharge of duty. The judgment of the trial court should be reversed and judgment here rendered, as should have been rendered in the court below, in favor of the appellant, against the defendant sheriff and his official bondsmen, in the sum of $1,238.36 plus interest thereon at the rate of 6 per cent per annum from April 3, 1949, and all costs of suit; being the full amount of the judgment against the judgment debtor Melvin May, d/b/a Dallas Feed Company, in favor of the judgment creditor, the appellant herein.