**DALLAS COUNTY CONSTABLE PRECINCT NO. 5, Michael Dupree, Appellant,**

v.

**GARDEN CITY BOXING CLUB, INC., Appellee.**

**No. 05–05–01224–CV.**

Court of Appeals of Texas, Dallas.

April 5, 2007.

Brian W. Erikson, Todd Keith Sellars, Assistant District Attorney, Dallas, for appellant.

Constable Michael Dupree, Dallas County Constable Precinct 5, Dallas, appellant pro se.

Andrew R. Korn, Korn, Bowdich & Diaz, L.L.P., Dallas, for appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion By Justice WHITTINGTON.

In this appeal involving a writ of execution and allegations that Dallas County Constable Precinct No. 5 Michael Dupree failed to performed his duty with respect to the writ, Dupree appeals the trial court's judgment in favor of Garden City Boxing Club, Inc. In six issues, Dupree contends (i) he established as a matter of law and the trial judge's finding to the contrary is against the great weight and preponderance of the evidence that Dupree was diligent, acted in good faith, and was entitled to judicial or official immunity, (ii) the trial judge erred in awarding the full amount of the judgment and awarding attorney's fees, and (iii) the "trial court erred in its findings related to the liability of Dallas County."[1] We conclude Dupree did not establish as a matter of law that he was diligent, acted in good faith, and was entitled to judicial or official immunity. We likewise conclude he failed to establish that the trial judge's findings to the contrary were not against the great weight and preponderance of the evidence. However, because we conclude the trial judge erred as a matter of law in awarding damages, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

### Background

Garden City is a company authorized to sub-license closed-circuit telecasts of select events, including championship boxing matches. Garden City sued Raul Melendez and several Dallas area businesses owned and operated by Melendez for their unlawful interception, transmission, and publication of a boxing event. When the parties did not answer, Garden City took a $210,000 default judgment. On May 11, 2004, a ninety-day writ of execution was delivered to Dupree who assigned it to Deputy Bostic. Because Bostic's workload prevented him from working the writ, Chief McIntyre and Sergeant Pullin took over the writ. On the evening of June 18, 2004, the two men, accompanied by Andrew Korn, legal counsel for Garden City, went to two establishments owned by the judgment debtor and seized approximately $1100. Thereafter, Pullin executed the return of the writ of execution and filed it with the County Clerk on June 29, 2004.

Garden City then filed a Motion to Recover Full Amount of Judgment under sections 34.064 and 34.065 of the Texas Civil Practice and Remedies Code. In the motion, Garden City alleged that Dupree was liable for the full amount of the judgment because he failed or refused to levy on or sell property subject to execution, "neglected and/or refused to return" the writ as required by law, and knowingly made a false entry in the return. Following a hearing, the trial judge found all issues in favor of Garden City. This appeal followed.

### Standards of Review

 Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Compass Bank v. MFP Fin. Servs., Inc.,* 152 S.W.3d 844, 851 (Tex.

---

1. In his brief, Constable Dupree raised a seventh issue, claiming he was entitled to a credit for the amount of any settlement reached between the surety and Garden City. We do not address this issue because he withdrew it during oral argument.

App.-Dallas 2005, pet. denied) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When a complete reporter's record is filed, the trial judge's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Compass Bank*, 152 S.W.3d at 851 (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam)). In doing so, we do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *FDIC v. F & A Equip. Leasing*, 854 S.W.2d 681, 684–85 (Tex.App.-Dallas 1993, no writ). An omitted finding, supported by the evidence, may be supplied by a presumption that it supports the judgment. *Black v. Dallas County Child Welfare Unit*, 835 S.W.2d 626, 630 n. 10 (Tex.1992); *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). We review conclusions of law to determine whether the trial judge correctly drew the legal conclusions from the facts. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Dallas Morning News Co. v. Bd. of Trustees of Dallas Indep. Sch. Dist.*, 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied).

A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In reviewing a matter of law challenge, we first examine the record for evidence that supports the adverse finding, while ignoring all evidence to the contrary. *Dow Chem.*, 46 S.W.3d at 241 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989)). We indulge every reasonable inference to support the finding, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). If there is no evidence to support the adverse finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241 (citing *Sterner*, 767 S.W.2d at 690). We sustain the point of error only if the contrary proposition is conclusively established. *Dow Chem.*, 46 S.W.3d at 241 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)).

A party challenging on appeal the factual sufficiency of an adverse finding on which that party had the burden of proof at trial must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. The reviewing court must consider and weigh all the evidence and may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242.

### Diligence, Good Faith, and Immunity

■ In his first, second, and third issues, Dupree contends he established as a matter of law and the trial judge's finding to the contrary is against the great weight and preponderance of the evidence that Dupree was diligent, acted in good faith, and was entitled to judicial and official immunity. We disagree.

■ The civil practice and remedies provides:

> If an officer neglects or refuses to return a writ of execution as required by law or makes a false return on a writ of execution, the officer and his sureties are liable to the person entitled to re-

ceive the money on the execution for the full amount of the debt, plus interest and costs.

TEX. CIV. PRAC. & REM.CODE ANN. § 34.064 (Vernon 1997). After a plaintiff pleads a prima facie case under this section, the defendant may raise any appropriate affirmative defenses, including that the plaintiff suffered no injury or the officer proved a sufficient excuse for not returning the writ of execution. *Fant Milling Co. v. May*, 240 S.W.2d 445, 449–50 (Tex.Civ. App.-Dallas 1951, writ ref'd n.r.e.) (no injury); *Waxahachie Nursery Co. v. Sansom*, 138 S.W. 422, 423 (Tex.Civ.App.-Austin 1911, no writ) (sufficient excuse for no return). The failure of the officer to plead and prove his affirmative defense will result in the officer being liable to the plaintiff. *Hackler v. H. Kohnstamm & Co.*, 227 S.W.2d 347, 350 (Tex.Civ.App.-Dallas 1950, no writ); *see Blanscet v. Palo Duro Furniture Co.*, 68 S.W.2d 527, 530 (Tex.Civ.App.-Amarillo 1934, no writ) (failure of officer to use due diligence constituted dereliction of duty which rendered him liable under statute); *Hale v. Bickett*, 78 S.W. 531, 531, 34 Tex.Civ.App. 369, 369 (1904, no writ) (sheriff, who failed to return writ, did not show he exercised proper diligence and was therefore liable).

Dupree challenges Conclusion of Law 6 that "Dupree neglected and refused to return a writ of execution as required by law and made a false return on a writ of execution." The record in this case shows the writ of execution issued April 21, 2004 and was delivered to Dupree on May 11, 2004. At that time, Dupree had several writs issued in favor of Garden City. To aid in the execution of these writs, Korn delivered a list of property owned by Melendez and the judgment debtors of the other writs. The properties listed for Melendez included Fiesta Palace Night Club, Billares El Centauro, and a residence. Dupree assigned the writ to Bostic.

When Korn subsequently contacted Bostic regarding the execution of the writ and discovered nothing had been done, Korn contacted McIntyre. Korn repeatedly contacted McIntyre throughout June, asking for the writ to be executed. In a facsimile transmission (fax) dated June 17, 2004, Korn stated:

These are Bars that sell alcohol. The method of exchange is almost exclusively cash. Every night the writs are not worked, via keeper's levy or Till Tapp, or otherwise, the chances of recovering the full amount of the Judgment are likely diminished. Although I take issue with how the Writs have been handled so far, I am still willing and available to provide the resources of my office (to the extent allowed by law) to assist you in any way possible.

The record shows McIntyre and Pullin, accompanied by Korn, went to Melendez's two establishments during the late night hours of June 18 and early morning hours of June 19, 2004. The officers secured approximately $1100 in cash. The officers and Korn had a discussion in the parking lot of the second establishment visited that night at which point Korn indicated he wanted to control the funds taken that night. In a fax memorandum dated June 22, 2004, Korn thanked McIntyre for the efforts made on June 18 and 19. He then stated:

As none of these Defendants has made payment arrangements, please use diligence and continue working the Writs. Please schedule another night to return to the Establishments. . . .

In a fax response dated June 23, 2004, Pullin informed Korn that, pursuant to the discussion between the officers and Korn following the June 18–19 execution of the writs, Korn "confirmed and agreed" with the officers "regarding the return of the

executed writs so that the subject funds could be dispersed and that process has been initiated." Upon receipt of Pullin's communication, Korn sent a fax response dated June 23, in which he stated:

> I received your 6/23/03 letter. I did **not** tell you to close out the Writs. That's just false. We have them issued for 90 days for a reason and its [sic] not so you can go out on day 60 for the first time. You are not finished as far as I am concerned, and I expect the Constable to keep seizing the cash we know will be located in these establishments and to otherwise fulfill his statutory duties.

Thereafter, the writ was returned, unsigned and undated, with the following notation:

### Constable's Return

> CAME TO HAND the 11th day of May A.D. 2004 at 11:58 o'clock A.M. and executed at 2445 W. Northwest Hwy on the 19th day of June A.D. 2004 at 12:30 *o'clock A.M.* by making demand upon the judgment debtor and thereafter by seizing those certain funds in the cash register in the amount of 787.00 and thereafter on the 19th day of June A.D. 2004 at 3227 W. Northwest Hwy at 1:10 o'clock A.M. by again making demand upon the judgment debtor and by seizing those certain funds in the cash register in the amount of 315.00 and *no further action pursuant to this Writ had at the request of plaintiff's counsel in this cause.*

(Emphasis added).

During the hearing on Garden City's motion, Pullin testified that, on the night the officers executed the writ, McIntyre spoke to Korn in the parking lot of the second establishment about the handling of the cash. According to Pullin, McIntyre "made some reference to making returns on the writs so the funds could be disbursed, and which [sic] Mr. Korn

agreed to that." McIntyre testified he asked Korn that night in the parking lot "if he wanted us to go ahead and return the money that we had collected on Monday. And he said, Yes. And that Monday morning we went ahead and processed everything." McIntyre explained that generally "when a partial payment is made, the writ is automatically turned back." An officer could collect partial payments but that did not "normally happen unless previous arrangements are made."

Korn testified McIntyre did not ask that evening if Korn wanted them to return the writ. Korn also testified he did not tell either McIntyre or Pullin to return the writ that evening. Rather, McIntyre asked if Korn wanted the money paid over to him. Korn responded that he did because it was his understanding that the constable's office "had the poor habit of holding money for too long after levy."

The record shows that contrary to the statement made on the constable's return, Korn did not request the writ be returned. Rather, McIntyre asked Korn if he wanted the officers "to go ahead and *return the money.*" (Emphasis added.). In response to this question, Korn indicated he wanted to control the funds that were seized. Thus, the evidence supports a finding that Dupree made a false return when he stated in the writ "no further action pursuant to this Writ had at the request of plaintiff's counsel in the cause." *See Sterner,* 767 S.W.2d at 691. After considering and weighing all the evidence in the record, we cannot conclude the finding that Dupree made a false return is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem.,* 46 S.W.3d at 242 (citing *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986)).

■ Furthermore, because the record shows Dupree made a false return, Dupree cannot show he used reasonable diligence in performing his official duty to execute the writ. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 7.003(a)(2) (Vernon 2002). Nor can he show that he "in good faith execute[d] the writ as provided by law and by the Texas Rules of Civil Procedure." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 7.003(a)(1) (Vernon 2002). It necessarily follows that Dupree failed to show (i) he was not liable for damages resulting from the execution of this writ or (ii) he was entitled to immunity. *See* § 7.003(a); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994) (officer has burden to establish affirmative defense of immunity by establishing he performed discretionary duty in good faith while acting within scope of authority); *see also Abercia v. Kingvision Pay–Per–View, Ltd.*, 217 S.W.3d 688, 703–04 (Tex.App.-El Paso 2007, no pet. h.) (constable failed to establish affirmative defense of immunity as matter of law). We overrule Dupree's first, second, and third issues.

## Damages

■ In his fourth issue, Dupree contends the trial judge erred in awarding the full amount of the debt pursuant to section 34.064 of the civil practice and remedies code. We agree.

■ As noted previously, section 34.064 provides that an officer who makes a false return is liable, along with his sureties, "to the person entitled to receive the money on the execution for the full amount of the debt, plus interest and costs." TEX. CIV. PRAC. & REM.CODE ANN. § 34.064. However, courts have rejected a strict interpretation of this section; rather, they have held the officer liable for an amount less than the total judgment if the officer establishes "that the value of the assets subject to execution was less than the amount of

appellee's judgment." *Hickey v. Couchman*, 797 S.W.2d 103, 110 (Tex.App.-Corpus Christi 1990, writ denied) (citing *Fant Milling Co.*, 240 S.W.2d at 449); *see U.M. & M. Credit Corp. v. Doss*, 452 S.W.2d 45, 47 (Tex.Civ.App.-Dallas 1970, writ ref'd n.r.e.); *Abercia*, 217 S.W.3d at 702; *Ko v. Chin*, 934 S.W.2d 839, 841 (Tex.App.-Houston [14th Dist.] 1996, no pet.). Thus, once the plaintiff pleads his prima facie case, the burden shifts to the defendant officer to either disprove an element of the plaintiff's case or prove "the fair market value of the property was less than the underlying judgment." *Ko*, 934 S.W.2d at 841; *see Fant Milling Co.*, 240 S.W.2d at 449 (concluding law allowed for "a recovery of the actual loss accruing from the officer's breach of duty; that is to say, if the value of the property that might have been levied on is less than the debt, interest and costs, then such value is the amount for which the plaintiff in the writ is entitled to judgment on the motion."); *Abercia*, 217 S.W.3d at 702 (to establish mitigation defense, officer must show market value of defendant's non-exempt property is less than amount of underlying judgment).

At the hearing, Garden City presented evidence of damages in support of its motion showing that the judgment debtor possessed property that was subject to execution. Dupree, having pleaded mitigation, responded by presenting evidence that the value of the judgment debtor's property was less than the full amount of the judgment. Nevertheless, after the hearing, the trial judge made the following conclusion of law:

> CL6. Constable Dupree neglected and refused to return a writ of execution as required by law and made a false return on a writ of execution. Therefore, Constable Dupree is liable to Plaintiff for the full amount of the debt, plus interest and costs pursuant

to TEX. CIV. PRAC. & REM.CODE ANN. § 34.064.

Because he pleaded and presented evidence of mitigation, Dupree is not liable for the full amount of the debt, plus interest and costs as a matter of law. Rather, he is liable for the lesser of the full amount of the debt *or* the fair market value of the non-exempt properties owned by the judgment debtor. *See U.M. & M. Credit Corp.*, 452 S.W.2d at 47; *Fant Milling Co.*, 240 S.W.2d at 449; *Ko*, 934 S.W.2d at 841. Therefore, this conclusion of law is erroneous. We sustain Dupree's fourth issue. Because we conclude the trial judge awarded damages in this case under an "erroneous understanding of the applicable legal principles," we reverse the trial court's order and remand this cause for further proceedings. *See U.M. & M. Credit Corp.*, 452 S.W.2d at 49 (op. on reh'g) ("Being of the opinion that the case was tried on the wrong theory, or under an erroneous understanding of the applicable legal principles, we reversed and remanded. We are not persuaded that we could properly have done otherwise. We do not feel that the case has been fully developed, and believe that the ends of justice would be better subserved by remanding than by rendering.").

In light of our disposition of this issue, we conclude we need not address Dupree's fifth and sixth issues addressing attorney's fees and the liability of Dallas County. *See* TEX.R.APP. P. 47.1. Dupree's seventh issue, regarding whether he was entitled to a credit for the amount of any settlement reached between the surety and Garden City, was withdrawn at oral argument.

We reverse the trial court's order and remand for further proceedings consistent with this opinion.