

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00008-CV

**COVE TERRACE ASSOCIATES, I, LTD.,**
**AS SUCCESSOR IN INTEREST TO**
**CTE SHOPPING CENTERS I, LTD.,**

                                                    **Appellant**

 **v.**

**MICHELE MCGUIRE,**

                                                    **Appellee**


**From the 52nd District Court**
**Coryell County, Texas**
**Trial Court No. CAC-03-34918**


## MEMORANDUM OPINION


This case is a commercial landlord-tenant dispute. Michele McGuire d/b/a Michele's Floral & Gifts sued her landlord, Cove Terrace Associates I, Ltd. (Cove Terrace) for breach of contract and constructive eviction after her floral shop suffered water damage. Assurance Company of America intervened and asserted a subrogation claim. Cove Terrace asserted several affirmative defenses and counterclaimed against McGuire for breach of the lease. A jury found in favor of McGuire, and the trial court

denied Cove Terrace's motion for judgment notwithstanding the verdict and entered judgment on the verdict. Raising three issues, Cove Terrace appeals the trial court's judgment.

## Factual Background

In 1989, McGuire purchased the flower shop located at 248 Cove Terrace in the Cove Terrace Shopping Center in Copperas Cove, Texas. Over the years, she entered into three lease agreements. In 1995, she entered into a lease agreement with CTE Shopping Centers, Ltd. for a term of three years. Cove Terrace subsequently bought the shopping center from CTE Shopping Centers, Ltd., and in 1998, McGuire agreed with Cove Terrace to extend the 1995 lease. The lease extension agreement stated that, except for several modifications, the 1995 lease would "remain in full force and effect" until February 28, 2003.

On November 29, 2001, McGuire began to have a problem with water entering her shop. She immediately called and reported the problem to Quine & Associates, Inc., Cove Terrace's agent and manager of the shopping center. Over the next few weeks, the parties attempted to discover the reason for the water intrusion, and McGuire discovered water in her shop on several more occasions. On each occasion, Quine & Associates had Diversified Services perform water extraction and drying services.

It was eventually discovered that a concrete ramp that had recently been constructed for another tenant in the alleyway behind the shop was the reason for the flooding. The ramp had been constructed so that it blocked the back door to the vacant unit adjacent to McGuire's shop, and when it rained, the water would flow over the

ramp's edge like a waterfall and under the door of the adjacent unit. The water was then migrating into McGuire's shop from the adjacent unit. Upon discovering this, a piece of metal was put in to divert the water, and a new door was built, stopping the water intrusion. No more water migrated into McGuire's shop after December 16, 2001.

In January 2002, McGuire began complaining about mildew and mold in her shop. At the end of January, Quine & Associates had Diversified Services treat and seal the floors and install new carpet in McGuire's office. In late February, McGuire discovered additional mold growing under a cooler. Diversified Services returned to the shop and wanted to put down a treatment to kill the mold underneath the cooler floor, but McGuire would not allow it. On February 28, McGuire permanently closed the shop at the Cove Terrace Shopping Center, and sometime between March 1 and March 3, she found another location that was just around the corner from the Cove Terrace Shopping Center.

On March 5, McGuire sent a letter notifying Cove Terrace that she was immediately vacating her unit at the shopping center because it had become uninhabitable due to the flooding and resultant mold infestation. On March 13, Cove Terrace sent a letter to McGuire, stating that she was in default under the terms of the lease agreement for failure to pay certain annual billbacks for 2001. The letter demanded that McGuire pay the amount by 12:00 p.m. on March 19 and continue thereafter making monthly payments of rent and other charges as stated in the lease, or Cove Terrace would notify its attorneys to sue her. When McGuire did not pay the 2001 billback charges by March 19, Brad Quine, the president of Quine & Associates, had the

locks to her unit changed and had a notice posted on the door to her unit that the locks were changed because she breached the lease agreement and that she could get new keys from Quine & Associates when the terms of her lease had been met.

By March 20, 2002, the date when the lockout notice was posted on the door, McGuire had already vacated the premises. She eventually paid the 2001 billback charges on April 20, but she testified that she did not pay rent from April 2002 through February 2003.

**Procedural Background**

McGuire sued Cove Terrace for breach of contract and constructive eviction. Assurance Company of America, McGuire's commercial property-casualty insurer, intervened, asserting its subrogation claim. Assurance had paid $16,355.50 for the replacement cost of the personal property that was damaged by the water; $6,650 for the nine days that McGuire's shop had to be closed; $19,759 for the anticipated environmental remediation expense; $7,581.45 for the balance due on two of the coolers that had to be left in the unit; and $38,708.75 for lost business and the balance due to rebuild her business. Cove Terrace counterclaimed against McGuire for breach of the lease.

A jury found that Cove Terrace breached the lease and constructively evicted McGuire and that McGuire was not liable to Cove Terrace for breach of the lease. The jury awarded McGuire $12,000 for economic damages and $20,000 for mental anguish damages. Accordingly, the trial court entered judgment in favor of McGuire for the principal sum of $32,000, plus pre-judgment and post-judgment interest. The judgment

further ordered that McGuire recover from Cove Terrace $40,000 in attorney's fees for services rendered through the trial of the case and conditional appellate attorney's fees in the court of appeals and the supreme court. Cove Terrace then filed a motion for judgment notwithstanding the verdict, a motion to disregard jury findings, and a motion for new trial, all of which the trial court denied.

## Issue No. 1

In its first issue, Cove Terrace contends in part that the trial court erred in denying its motion for judgment notwithstanding the verdict. Specifically, Cove Terrace argues that the jury's answers to Question No. 1A and B[1] were immaterial in light of the language of the lease.

> A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *see also Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (directed verdict proper only when evidence conclusively establishes right of movant to judgment or negates right of opponent or evidence is insufficient to raise material fact issue); *Cain v. Pruett*, 938 S.W.2d 152, 160 (Tex. App.—Dallas 1996, no writ) (directed verdict proper when evidence reflects that no other verdict can be rendered and moving party is entitled to judgment as a matter of law). A motion for j.n.o.v. should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *Morrell v. Finke*, 184 S.W.3d 257, 290 (Tex. App.—Fort Worth 2005, pet. denied); *see also United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 n.4 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A court should grant a motion for judgment notwithstanding the verdict if a legal principle prevents a party from prevailing on its claim.").

*Mangum v. Turner*, 255 S.W.3d 223, 226 (Tex. App.—Waco 2008, pet. denied).

---

[1] Question No. 1A and B of the jury charge ask whether CTE Shopping Centers, Ltd., as landlord, failed to comply with its agreement with McGuire by failing to provide peaceful and quiet possession and failed to operate, manage, and maintain the common area adjacent to McGuire's unit.

We apply well-established rules of contract interpretation in construing the lease between Cove Terrace and McGuire. Our primary concern in interpreting the contract is to ascertain the true intentions of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). If the written instrument is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous, and we will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense. *Heritage Res., Inc. v. Nations Bank*, 939 S.W.2d 118, 121 (Tex. 1996). We must examine and consider the entire writing in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To the extent of any conflict, specific provisions control over more general ones. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994).

Article XIV of the lease agreement between Cove Terrace and McGuire is entitled "NON-LIABILITY FOR CERTAIN DAMAGES," and Section 14.1 of the article states:

> Landlord and Landlord's agents and employees shall not be liable to Tenant for any injury to person or damage to property caused by the Demised Premises or other portions of the Shopping Center becoming out of repair or by defect or failure of any structural element of the Demised Premises or of any equipment, pipes or wiring, or broken glass, or by the backing up of drains, or by gas, water, steam, electricity or oil leaking, escaping or flowing into the Demised Premises (except where due to Landlord's willful failure to make repairs required to be made by Landlord hereunder, after the expiration of a reasonable time after written notice to Landlord of the need for such repairs), nor shall Landlord be liable to Tenant for any loss or damage that may be occasioned by or through the acts or omissions of other Tenants of the Shopping Center or

any other persons whomsoever, excepting only duly authorized employees and agents of Landlord.

McGuire argues that this section does not preclude her recovery because it only applies when the injury or damage is caused by the leased premises or other portions of the shopping center "becoming out of repair," and her recovery was not based on something that "became out of repair." We disagree. After removing the inapplicable language, Section 14.1 states: "Landlord . . . shall not be liable to Tenant for any injury to person or damage to property caused . . . by . . . water . . . flowing into the Demised Premises (except where due to Landlord's willful failure to make repairs required to be made by Landlord . . . ) . . . ."[2] The plain language of Section 14.1 applies to the undisputed facts in this case, and, under Section 14.1, Cove Terrace is not liable to McGuire for "any injury to person or damage to property" caused by the water that flowed into her shop. Therefore, Cove Terrace is entitled to judgment as a matter of law because the lease precludes McGuire's recovery, and the trial court erred in denying its motion for judgment notwithstanding the verdict. We sustain Cove Terrace's first issue.

**Issue No. 2**

In its second issue, Cove Terrace contends that the trial court erred in awarding McGuire mental anguish damages on her constructive eviction claim. For the same reason we sustained Cove Terrace's first issue, we also sustain its second issue.

---

[2] Section 8.1 provides that the landlord has a duty to make repairs only to the unit's foundation, exterior walls, and roof.

**Issue No. 3**

In its third issue, Cove Terrace argues that McGuire's breach was established as a matter of law, contrary to the jury's answers to Question Nos. 4 and 6 of the jury charge,[3] and that the trial court erred in failing to award it damages on its counterclaim for breach of the lease. Cove Terrace argues in the alternative that the trial court should have granted a new trial because the jury's answers to Question Nos. 4 and 6 are against the great weight and preponderance of the evidence.

When the party that had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). Consistent with *City of Keller v. Wilson*, we first search the record for evidence favorable to the adverse finding, disregarding all contrary evidence unless a reasonable factfinder could not. *One Ford Mustang v. State,* 231 S.W.3d 445, 449 (Tex. App.—Waco 2007, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dallas County Constable v. Garden City Boxing Club, Inc.,* 219 S.W.3d 613, 616 (Tex. App.—Dallas 2007, no pet.); *Sellers v. Foster,* 199 S.W.3d 385, 392 (Tex. App.—Fort Worth 2006, no pet.)). If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id.*

---

[3] Question No. 4 of the jury charge asks whether McGuire failed to comply with the lease agreement by failing to pay rent, including additional rent for common area maintenance, property taxes, and insurance, from April 1, 2002, through February 28, 2003. Question No. 6 of the jury charge asks what sum of money would fairly and reasonably compensate CTE Shopping Centers, Ltd., for its damages caused by such a breach by McGuire.

The lease provides that it was to terminate on February 28, 2003, and, until that time, McGuire was required to pay monthly rent and other monthly charges for common area maintenance, taxes escrow, and insurance escrow. At trial, Cove Terrace's evidence that McGuire had not paid $13,472 was not disputed. The lease agreement further states that McGuire shall be deemed to have defaulted under the lease if she "fail[s] to pay any installment of rent or any other obligations hereunder involving the payment of money and such failure shall continue for a period of five days after the date due."

McGuire admitted at trial that she did not pay rent and other fees from April 2002 through February 2003, but she argues in her brief that her failure to pay rent was excused because the jury determined that Cove Terrace constructively evicted her. However, as explained above, under Section 14.1 of the lease agreement, Cove Terrace is not liable to McGuire for any injury to person or damage to property caused by water flowing into her unit, and it only had a duty to repair the foundation, exterior walls, and roof of the unit. Thus, Cove Terrace could not have constructively evicted McGuire by refusing to remedy the damages of which she complained.

Cove Terrace established McGuire's breach of the lease and damages as a matter of law; therefore, we sustain its third issue. The court did not make a finding as to Cove Terrace's reasonable and necessary attorney's fees; therefore, we remand that issue to the trial court for its determination.

**Conclusion**

Having sustained Cove Terrace's first two issues, we reverse and render judgment in part that McGuire take nothing from Cove Terrace. On Cove Terrace's third issue, we reverse the trial court's judgment, render judgment that it recover $13,472 from McGuire, and remand the cause to the trial court for its consideration of Cove Terrace's claim for attorney's fees on its counterclaim.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Reversed and rendered in part; reversed and remanded in part
Opinion delivered and filed October 14, 2009
[CV06]