**Brenda Kay COOK, Individually and as Community Administratrix of the Estate of Ralph Clinton Cook, Tammy Marie Cook Jackson, Tonya Donee Cook Miller, and Roy Wayne Cook, Appellants,**

v.

**CATERPILLAR, INC., formerly Caterpillar Tractor Company, a Corporation, Appellee.**

No. 07–92–0224–CV.

Court of Appeals of Texas, Amarillo.

Feb. 25, 1993.

Rehearing Denied March 23, 1993.

---

**6.** From this point, "Rule" refers to the Supreme Court rules for Harris County.

Clifford Krier Manning Greak & Stone PC, Nolan Greak, Lubbock, for appellants.

Gibson Ochsner & Adkins LLP, Wayne P. Sturdivant, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Contending the trial court erred in failing to submit requested jury instructions, in giving improper instructions and definitions, and in not granting a new trial when insurance was injected during the trial, Brenda Kay Cook, individually and as community administratrix of the Estate of Ralph Clinton Cook; Tammy Marie Cook Jackson; Tonya Donee Cook Miller; and Roy Wayne Cook, collectively referred to as the Cooks, appeal from the take-nothing judgment rendered in their wrongful death action against Caterpillar, Inc., formerly Caterpillar Tractor Company, a Corporation.[1] Disagreeing, we will affirm the judgment.

On the morning of 6 June 1988, the road maintenance crew of Castro County, Precinct 3, began their day's work. After fueling their graders, the crew traveled north on Highway 1055. The foreman, Gordon Stokes, driving a Caterpillar model 140G road grader, was followed by crew members Terry Mixson and Darryl Ball. Two miles along the highway, Ball turned off to the east to begin work on the road Stokes had assigned him to grade. Mixson continued to follow Stokes for approximately another two miles until the accident giving rise to this action occurred.

Mixson testified that he did not know their destination, but followed Stokes as he had been instructed. Having adjusted his rearview mirror to enable him to see farther back down the road than he could in the mirror as installed by Caterpillar,[2] he saw in the mirror the livestock tractor trailer driven by Ralph Cook approaching "quite a ways back." Mixson saw Cook pass his grader in the southbound lane at a speed of approximately 70 miles per hour, and he saw Cook return to the northbound lane. He stated he must have looked down at that point and did not see the impact of the collision. Stopping his grader off the road after the collision, he and Stokes began to put out the fire in Cook's truck.

Stokes testified that he was travelling straight in the northbound lane at approximately 20 miles per hour. He did not attempt to turn left, nor did he swerve to the left, and his grader, including its blade, was entirely in the right lane. He felt the impact of the truck hit "somewhere behind the cab or alongside the cab" of the grader, and he was knocked down to the floorboard between the seat and the console. He did not recall anything else until the time he was putting out the fire in Cook's truck.

Cook's truck came to rest in a ditch on the west side of the road with the tractor facing southeast and the trailer pointing northwest. Stokes's grader came to rest on the east side of the road, several feet farther north of Cook's truck. Cook was thrown from the cab of the truck onto the east side of the road, just south of the grader.

Charles Brent Self, Carl Simpson, and Curtis Smith arrived on the scene five to ten minutes after the accident. Cook was breathing, but unconscious. An ambulance was called and Cook was taken to the hospital, where he died about an hour later.

The Cooks brought their action pursuant to the Texas Civil Practice and Remedies

---

1. Caterpillar was made a defendant after the Cooks instituted their suit against Gordon Stokes and Castro County, Texas. Stokes and Castro County settled with the Cooks prior to trial, and they are not parties to this litigation.

2. The rearview mirror installed by Caterpillar was positioned to see only a few feet behind the grader in order to view the work being done by the machine.

Code Annotated § 71.001 *et seq.* (Vernon 1986), commonly referred to as the Wrongful Death and Survival Statute. By their live trial pleadings against Caterpillar, the Cooks alleged that (1) the grader was defectively designed, marketed, distributed, and sold; (2) Caterpillar was strictly liable because they sold the product in a defective condition, or a defectively designed condition, which was unreasonably dangerous; and (3) Caterpillar was negligent per se because they were required by law to sell the grader with outside mirrors and turn signals, and failed to do so; and that such actions constituted negligence which was the proximate cause of the accident.

The jury found that only Cook's negligence proximately caused the accident, and failed to find that there was a design or manufacturing defect in the grader which was the producing cause of the accident. Adhering to the court's instructions, the jury did not answer the conditionally submitted questions. Judgment, rendered on the verdict, was that the Cooks take nothing.

Perfecting their appeal, the Cooks present seven points of error, which can be grouped into three categories. They submit the trial court erred in: (1) failing to give their requested instructions on (a) Caterpillar's affirmative duty, (b) its duty to manufacture and sell the grader in a condition that was not unreasonable and dangerous, and (c) negligence per se; (2) giving Caterpillar's requested instructions (a) to include the phrase "unbroken by a new and independent cause" in the definitions of proximate cause and producing cause, (b) concerning "new and independent cause" under the definition of producing cause, and (c) concerning sole proximate cause in the definitions of proximate and producing cause; and (3) failing to grant a new trial because Caterpillar's attorney deliberately injected insurance into the trial.

3. The § 71.05 instruction for a design defect was the one approved in *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 n. 1 (Tex.1979), and successively held correct in *Fleishman v.*

REQUESTED INSTRUCTIONS

The Cooks alleged and maintained that by making outside rearview mirrors and turn signal devices optional instead of standard equipment, Caterpillar designed, manufactured, marketed, and sold the grader in an unreasonably dangerous condition. In this connection, the trial court submitted to the jury the questions of design defect and manufacturing defect with the instructions for each in the form approved in 3 State Bar of Texas, Texas Pattern Jury Charges PJC § 71.05 and § 71.04 (1990), respectively.[3]

█ The Cooks do not directly fault the instructions given; instead, they utilize their first two points of error to contend that the trial court erred in failing to give their requested jury instructions, which were tendered in these words:

CATERPILLAR, INC., as the manufacturer of the motor grader in question, has the affirmative duty to manufacture and sell the motor grader without design defects and without defects. The fact that CATERPILLAR, INC. makes turn signals and outside mirrors optional safety equipment DOES NOT relieve CATERPILLAR, INC. of its affirmative duty, if the motor grader is "defective" or there is a "design defect" in the motor grader being manufactured or sold without turn signals or without outside mirrors.

CATERPILLAR, INC. has the obligation to manufacture and sell a motor grader that is not in an unreasonably dangerous condition. Because that obligation cannot be delegated to another, it is not a defense for CATERPILLAR, INC. that another, including CASTRO COUNTY, TEXAS, failed to make it free from an unreasonably dangerous condition.

The term "cannot be delegated" means the obligation must be performed by CATERPILLAR, INC. and cannot be left

*Guadiano,* 651 S.W.2d 730, 731 (Tex.1983), and *Acord v. General Motors Corp.,* 669 S.W.2d 111, 115 (Tex.1984).

to another, including CASTRO COUNTY, TEXAS.

The failure to give the instructions, the Cooks represent, caused the rendition of an improper verdict. We do not agree.

As revealed by the Cooks' brief, the requested instructions were extracted from the pronouncements of other state and federal courts, but those declarations do not control the practice in this state. Indeed, the requested instructions are the antithesis of the instructions for product liability submissions which, as noted in *Fleishman v. Guadiano*, 651 S.W.2d 730, 731 (Tex. 1983), have been fully developed and collected in Texas Pattern Jury Charges. Those instructions are sufficient. *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984).

Then, without regard to whether the requested instructions may have correctly stated the law, they were surplus instructions with which the jury should not be burdened and, as such, were correctly refused by the trial court. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984). The first two points of error are overruled.

█ It is undisputed that outside rearview mirrors and turn signals were available as optional equipment on the motor grader, but Castro County did not include these items in its bid specifications, and Caterpillar did not supply the optional items. In this regard, the Cooks pleaded that Caterpillar was negligent per se because it sold the motor grader without turn signals as required by law, and requested the court to instruct the jury that:

> The law requires manufacturers of motor graders to place turn signals on motor graders. Failure to comply with the law is negligence in itself.

The court refused to give the instruction and, by their third point of error, the Cooks contend the trial court's refusal was error.

As authority for their contention, the Cooks primarily rely upon sections of article 6701d of the Texas Revised Civil Statutes Annotated (Vernon 1977), the Uniform Act Regulating Traffic on Highways. Specifically, the Cooks, noting that motor graders come within the statutory definitions of motor vehicles, invoke § 69(b) and § 118(b). Section 69(b) provides in pertinent part that:

> Any motor vehicle in use on a highway shall be equipped with, and required signals shall be given by, signal lamps when the distance from the center of the top of the steering post to the left outside limit of the body, cab or load of such motor vehicle exceeds 24 inches....

And, as material, § 118(b) states that:

> After January 1, 1972, every motor vehicle, trailer, semi-trailer and pole trailer shall be equipped with ... electric turn signal lamps....

Since the evidence showed that the motor grader was designed and marketed as road machinery, and the distance from the center of the top of the steering post to the left outside limit of the body of the motor grader exceeded 24 inches, the Cooks advocate that by operation of the two statutes, Caterpillar was negligent per se for selling the motor grader without turn signals, and the court should have so instructed the jury. We cannot agree.

As a part of the legislative scheme to regulate traffic on highways, the Legislature enacted article XIV of article 6701d, *supra*, comprised of sections 108 through 139F, inclusive, to specifically address equipment for vehicles. Section 118(b), on which the Cooks rely for the requirement that every motor vehicle shall be equipped with electric turn signal lamps, is a part of article XIV, an amended section of which, section 108(c) (Vernon Supp.1993), specifies that:

> The provisions of this Article and rules of the Department [of Public Safety] adopted under this Article with respect to equipment on vehicles shall not apply to implements of husbandry, road machinery, road rollers or farm tractors, except as herein made applicable.

The term "road machinery" is not defined, but since the evidence is undisputed that the road grader was designed and marketed as road machinery, it follows that § 118(b) does not impose a duty on the

manufacturer, Caterpillar, to equip its motor grader with turn signals.

■ Neither is that duty imposed on the manufacturer, Caterpillar, by § 69(b), the other provision upon which the Cooks rely. It is clear from the legislative scheme that § 69(b) is one of those sections which pertains to the operation of vehicles upon the highways, not to the manufacturer of those vehicles exempted by § 108(c) from the equipment requirements. Indeed, § 68 (Vernon 1977), which governs the operator's turning movements and required signals, directs, in its subsection (d), that the signals provided for in § 69 shall be used to indicate an intention to turn, change lanes, or start from a parked position. This proviso is consistent with the declaration in § 21 (Vernon 1977) that, with an exception not relevant here, the provisions of the Act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways. Conformably, § 108, a part of the equipment article, has the proclamation, in subsections (a–1) and (2), that it is a misdemeanor for a person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle that is not equipped at all times with equipment required by and meeting the standards established in the equipment article.

These conclusions are not altered by the Cooks' citation of *City of Houston v. Moore*, 389 S.W.2d 545 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.). In *Moore*, after a collision between an automobile and a road maintainer, the jury found the operator of the maintainer was negligent in five instances, one of which was that the maintainer was not equipped with signal devices. *Id.* at 547. However, the manufacturer of the maintainer was not a party to the litigation, and the issue of negligence per se was not addressed by the court.

■ Then, for negligence per se to be imposed upon Caterpillar, there must have been Caterpillar's unexcused violation of a legislative enactment which is adopted by the court as defining the standard of conduct of a reasonable man. *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 102 (Tex.1977). Because the Cooks did not show a statutory violation by Caterpillar, their requested instruction was a misstatement of the law, and the trial court correctly refused it. The third point of error is overruled.

## INSTRUCTIONS GIVEN

Although the Cooks alleged that the wrongful death of Ralph Clinton Cook was caused when Stokes, without warning of any kind, turned the road grader into the right-of-way of, and collided with, Cook's vehicle, they also alleged that Caterpillar's design and sale of the motor grader in a defective condition was a proximate cause of the collision. Responding, Caterpillar alleged, in part, that the negligence of Castro County and its agent, servant, and employee constituted a new and independent, intervening, producing, and proximate cause of the Cooks' damages. In its charge, the court, preliminarily to posing its questions, set out its definitions of and instructions on proximate cause and producing cause, which included within each the definition of new and independent cause. The definitions and instructions prompted the complaints presented by the Cooks with their next three points of error.

■ The Cooks utilize their fourth and fifth points to contend the court erred in including within the definitions of proximate cause and producing cause the phrase, "unbroken by any new and independent cause," and in giving the instruction concerning new and independent cause *under* the definition of producing cause. This was error, the Cooks submit, because there was no evidence or, alternatively, insufficient evidence to support such instructions, and such was a comment on the case by the court which caused the rendition of an improper verdict. We are not in accord.

At the outset, we observe that the Cooks' denominated "instruction" concerning new and independent cause under the definition of producing cause was merely the definition of new and independent cause. The Cooks did not object at trial, and do not contend on appeal, that the definitions and instructions were incorrect; rather, they

objected and contend that they were erroneously given. And, although the Cooks include in their points a charge of insufficient evidence to support the instructions, their only evidential argument under the points is a no evidence argument. Then, considering the wording of the points and the argument under them to determine the Cooks' intent to raise only a no evidence point, *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982), we are relegated to ascertaining whether there is any evidence and inferences tending to support the instructions. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

The term "new and independent cause" means the act or omission of a separate and independent agency that destroys the causal connection between a negligent act or omission of the defendant and the injury complained of, and thereby becomes in itself the immediate cause of the injury. *Phoenix Refining Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60, 61 (1935). If the evidence raises the issue of new and independent cause, it is reversible error not to define and include the term in the definition of proximate (and producing) cause. *Young v. Massey*, 128 Tex. 638, 101 S.W.2d 809, 810 (1937).

To the allegations that it was negligent in designing and selling the motor grader without outside rearview mirrors and turn signals, Caterpillar also interposed the negligence of Castro County and its agent-employee for the lack of these optional items on the grader. Caterpillar produced evidence that (1) the county commissioners solicited bids to purchase a new motor grader, (2) the bid specifications did not include the optional and available turn signals, (3) Caterpillar's bid to the County did not include optional equipment for the grader, and (4) although the County chose to purchase some additional equipment, they did not purchase turn signals.

Dean Davidson, the Cooks' accident reconstructionist, formed the opinion that Stokes was turning left into the southbound lane of traffic at the time of the impact, but his testimony was contradicted. Stokes testified he was not turning left, but travelling straight in the northbound lane.[4] He said that if he had intended to turn left, he would have pulled completely off the highway on the right hand side, stopped the machine, turned around in the seat to be sure there was no traffic in either direction, and then proceeded to turn. He stated that had the grader been equipped with outside rearview mirrors and turn signals, he would not have relied on them and it would not be safe to do so. William Michael Otto, a reconstruction expert hired by Caterpillar, testified that in his opinion, the grader was driving straight, completely in the right lane at the point of impact, and the truck had begun to jackknife before hitting the grader.

Given this evidence, it presents the question whether the act or omission of Cook or Stokes, or both, destroyed the causal connection between the alleged negligence of Caterpillar and the injury complained of, and thereby became itself or themselves the immediate cause of the injury. Thus, there is some evidence to support the instructions on new and independent cause, and the court properly gave them.[5] The Cooks' fourth and fifth points of error are overruled.

In defining and instructing on proximate cause and producing cause, the court included an instruction on sole proximate cause and sole cause, respectively. The Cooks objected to the charge on the grounds of no evidence and insufficient evidence to support the instructions, and that by submitting them, the court unduly commented on the case. The objections are reiterated as the Cooks' sixth-point contention.

---

4. There was testimony by Simpson and Self that immediately after the accident, Stokes told them he had swerved to miss a yellow car, but Stokes disputed this testimony, and there was no other evidence of the presence of a yellow car.

5. Parenthetically, we note that had the Cooks actually raised their stated insufficient evidence points of error, we, guided by the standard of review enunciated in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), would have determined that the evidence supporting the instructions was factually sufficient.

Unquestionably, the pleadings raised the issue of sole cause. The Cooks pleaded that Stokes, "without warning of any kind, turned the . . . road grader into the right-of-way of . . . and violently collided with the vehicle being driven by RALPH CLINTON COOK causing personal injuries . . . and the ultimate death of RALPH CLINTON COOK." Caterpillar alleged that "an act or omission of Castro County, its agents, servants and employees, not parties to this suit, was the sole cause of the occurrence in question." As previously noticed, there was evidence tending to show that Stokes, who was not a party to the litigation between the Cooks and Caterpillar, turned the motor grader into the path of Cook's vehicle, thereby causing Cook's death.

As earlier determined, the Cooks raised only a no evidence point of error. The evidence tending to show that the conduct of Stokes, a third party, was the sole cause of the accident is enough evidence to support the giving of the instructions.[6] *Ahlschlager v. Remington Arms Co., Inc.*, 750 S.W.2d 832, 835 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

■ We have not overlooked the Cooks' argument that if we deem sole cause instructions were proper, we should determine whether the actual wording of the instructions was correct. However, the Cooks did not object to the charge on the ground that the sole cause instructions were incorrectly worded and, consequently, they have not preserved the matter for appellate review. Tex.R.App.P. 52(a); *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex.1986). The sixth point of error is overruled.

### INSURANCE

■ The Cooks' last contention is that the court erred in failing to grant their motion for new trial because Caterpillar's attorney deliberately injected insurance into the trial of the case. The injection occurred when the witness Self was being questioned by the Cooks' counsel about a statement he had given, and is recorded as follows:

Q: Mr. Self, did anybody from Caterpillar come out and take a statement from you?

A: No, sir.

Q: Do you know what statement Mr. Sturdivant [Caterpillar's trial counsel] is referring to?

A: There was an insurance lady that called. I don't know when it was. She was insurance, I guess, for Caterpillar.

MR. STURDIVANT: We object and ask the Court to instruct the jury not to consider that. Because there is no evidence that Caterpillar has any insurance and the truth of the matter, it doesn't have any insurance.

At this point, counsel for the Cooks asked to approach the bench, and the court excused the jury while the court, counsel, and the witness discussed the matter.

The Cooks, through counsel, stated that they did not think it was proper for Caterpillar to inject that it does not have insurance. After a discussion, the court asked for counsels' best judgment of the appropriate instruction to be given the jury, and the Cooks' counsel said, "I think just say to disregard his answers would be the best thing to do." Caterpillar's counsel acquiesced. The jury was recalled and instructed "to disregard the last two questions and responses and the discussion that followed."

The statement that it was not proper for Caterpillar to inject its lack of insurance was not made as an objection, and the Cooks did not request a mistrial. The court instructed the jury as suggested by counsel, and added a further admonishment, by which the Cooks received more instructive relief than they sought.

We deem the court's instruction sufficient to cure any error concerning the injection of insurance, and it must be presumed that the jury followed the court's instruc-

6. Again, similar to our comments in marginal note 5, if an insufficient point of error had been raised, we would hold the evidence factually sufficient to support the giving of the instruction.

**442**

tion. *Duncan v. Smith,* 393 S.W.2d 798, 805 (Tex.1965). In these circumstances, the Cooks are in no position to complain that the court erred in not giving them more than they sought and received. *Cf. Northeast Texas Motor Lines v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942) ("[A] litigant cannot ask something of a court and then complain that the court committed error in giving it to him"). The Cooks' seventh point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.