NO. 07-09-00350-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JULY
16, 2010

 



 

JACOB NEUFELD, APPELLANT

 

v.

 

KENNETH HUDNALL, STANLEY BAKER,

JOEL HOVDEN, TEJAS MOTORS AND

LONE STAR AUTO AUCTION, INC., APPELLEES 



 



 

 FROM THE 72ND DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2007-541,835; HONORABLE RUBEN GONZALES REYES, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Jacob Neufeld, appeals a
take-nothing judgment entered by the trial court on Neufeld’s claim for
personal injuries.  We affirm.

Background

            On
September 19, 2007, Neufeld attended an automobile auction on the premises of
Lone Star Auto Auction.  Prior to the
beginning of the auction, Neufeld walked through the lot to take a closer look
at the cars that were to be auctioned and to determine which vehicles he would
bid on.  As Neufeld was inspecting the
autos, the employees of Lone Star began lining up the cars to be
auctioned.  Two vehicles were at the head
of the line when Kenneth Hudnall pulled a third to
the end of the line.  As Neufeld was walking
between the first and second cars in the line, the car that Hudnall
was driving lurched forward and hit the second car, which was pushed up to the
first car, trapping Neufeld between the two vehicles and crushing his legs.

            Neufeld
filed suit against Lone Star; Hudnall; Stanley Baker
and Joel Hovden, the drivers of the other two
vehicles involved in the accident; and Tejas Motors,
a customer of the auction.  In their
answers, the defendants generally denied Neufeld’s claims, alleged that Neufeld
was negligent, and asserted the inferential rebuttal defenses of intervening
cause, act of God, and unavoidable accident. 
During the ensuing bench trial, the trial court granted directed verdict
in favor of Baker and Hovden.  Toward the end of the trial, Neufeld amended
his petition to omit any claim against Tejas
Motors.  Thus, the trial court’s
take-nothing judgment related to Neufeld’s claims against Hudnall
and Lone Star.  Findings of fact and
conclusions of law were requested and the trial court entered findings and
conclusions.  Neufeld then timely filed
the present appeal.

            By
one issue, Neufeld challenges the factual sufficiency of the evidence
supporting the judgment.  

Factual Sufficiency

            By
his sole issue, Neufeld contends that the trial court committed reversible
error in entering judgment finding that the defendants were not negligent
because such judgment is against the great weight and preponderance of the
evidence.  Neufeld’s issue challenges the
factual sufficiency of the judgment as a whole rather than the sufficiency of
the evidence supporting any particular finding of fact made by the trial court.

Standard of Review

            In
a bench trial, findings of fact have the same force and dignity as a jury's
verdict upon jury questions.  Dupree
v. Garden City Boxing Club, Inc., 219 S.W.3d 613, 615-16 (Tex.App.--Dallas 2007, no pet.); In re C.R.O., 96
S.W.3d 442, 447 (Tex.App.—Amarillo 2002, pet. denied).
 However, findings of fact are not
conclusive when we have a complete record. 
Leax v. Leax, 305 S.W.3d 22, 28 (Tex.App.—Houston [1st Dist.] 2009, pet. denied).  When a complete reporter’s record is filed,
the trial court’s factual findings are reviewable for legal and factual sufficiency
under the same standards that are applied in reviewing the sufficiency of the evidence
supporting jury findings.  Dupree,
219 S.W.3d at 616; In re C.R.O., 96 S.W.3d at
447.

When an appellant challenges the
factual sufficiency of an adverse finding upon which he had the burden of proof,
he must show that the finding was against the great weight and preponderance of
the evidence.  See Dupree, 219 S.W.3d at 616.  The
reviewing court must consider and weigh all the evidence and may set aside the
finding only if the evidence is so weak or the finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and
unjust.  Id.  In conducting this review, we may not
substitute our judgment for that of the finder of fact, even if we would have
reached a different conclusion when reviewing the evidence.  Id.

A trial court’s conclusions of law
may not be challenged for factual sufficiency,
however, a reviewing court may review the conclusions drawn from the facts to
determine their correctness.  See id.
(citing BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002)).  If a finding that is supported by the
evidence and necessary to support a conclusion is omitted, we may imply the
finding and that it supports the judgment. 
See id.

The appellees
contend that Neufeld failed to preserve any error because his factual
sufficiency challenge does not challenge any specific finding of fact made by
the trial court.  Generally, while findings
of fact are reviewable for legal and factual sufficiency, an attack on the sufficiency
of the evidence must be directed at specific findings of fact rather than at
the judgment as a whole.  In re an Unborn Child, 153 S.W.3d 559, 560 (Tex.App.--Amarillo 2004, pet. denied).  If the trial court's findings of fact are not
challenged by an issue on appeal, they are binding upon the appellate court.  See Nw. Park
Homeowners Ass'n, Inc. v. Brundrett,
970 S.W.2d 700, 704 (Tex.App.--Amarillo 1998, pet.
denied).  However, a challenge to
an unidentified finding of fact may be sufficient for review if we can fairly
determine from the argument the specific finding of fact which is being
challenged.  Shaw v. County of Dallas,
251 S.W.3d 165, 169 (Tex.App.—Dallas 2008, pet.
denied).

Analysis

            In
the present case, Neufeld’s issue contends that the judgment as a whole was
against the great weight and preponderance of the evidence.  However, a review of Neufeld’s argument
allows this Court to fairly determine that Neufeld is challenging the factual
sufficiency of the evidence to support the trial court’s findings that “Hudnall was not negligent on the occasion in question and
did not proximately cause any damage to Neufeld in that Hudnall
experienced an episode which was an intervening cause [which] was unexpected,
unanticipated[,] and unforeseeable;” “Lone Star was not negligent on the
occasion in question and did not proximately cause any damage to Neufeld;”[1]
and “No dangerous condition existed on the premises operated by Lone Star, and
Neufeld was not injured as a result of any condition on the premises at the
time the accident in question occurred.”[2]

            Neufeld’s
challenge to the trial court’s finding that Hudnall
did not proximately cause Neufeld’s injuries because of an unexpected,
unanticipated, and unforeseen intervening cause is premised on Neufeld’s
contention that the expert medical opinion evidence offered to prove the
intervening cause was too speculative to constitute probative evidence.  

            An
independent and intervening cause destroys the causal link between a claimed
act of negligence and the resulting damage. 
See Tarry Warehouse & Storage Co. v. Duvall, 131 Tex.
466, 115 S.W.2d 401, 405 (1938) (bright lights that blinded driver were
intervening cause that broke the causal chain); Cook v. Caterpillar, Inc.,
849 S.W.2d 434, 440 (Tex.App.—Amarillo 1993, writ
denied) (acts of third-party driver destroyed the causal link between product
defect and injury).  When a claim of
intervening cause is premised on a medical episode or condition, medical expert
testimony is required.  See Ins.
Co. of N. Am. v. Myers, 411 S.W.2d 710, 713 (Tex.
1966).  Expert medical opinion evidence
relating to issues of causation “must rest in reasonable probabilities;
otherwise, the inference that such actually did occur can be no more than
speculation and conjecture.”  Id.  The determination of whether expert opinion
evidence is based on reasonable probability depends on consideration of the
substance of the evidence and does not turn on semantics or the use of any
particular term or phrase.  Id.  Expert opinion evidence regarding causation
that is not based on reasonable probability, but is rather based on speculation
and surmise, is no evidence.  See Onwuteaka v. Gill,
908 S.W.2d 276, 283 (Tex.App.—Houston [1st
Dist.] 1995, no writ).

            In
the present case, the expert medical opinion evidence offered by Lone Star
concluded that Hudnall suffered a pre-syncopal episode which led to confusion and loss of control
of his vehicle.  The expert, Kevin Funk,
M.D., chronicled a number of different potential causes of this pre-syncopal episode that are consistent with Hudnall’s medical history. 
While Dr. Funk does indicate that he will “assume” that Hudnall suffered a pre-syncopal
episode, the context of this statement indicates that it was intended only to
convey Dr. Funk’s starting hypothesis. 
The remainder of the report then identifies a number of different causes
of pre-syncopal episodes that are present in Hudnall’s medical history. 
It is only after discussion of Hudnall’s
medical history and its correspondence to many potential causes of pre-syncopal episodes that Dr. Funk concludes that, “in all
reasonable medical probability, Mr. Hudnall suffered
a pre-syncopal episode.”  While Dr. Funk does not definitively identify
what caused Hudnall to experience this pre-syncopal episode, he does conclude, within a reasonable
degree of medical probability, that Hudnall
experienced a pre-syncopal episode.  Having determined that Dr. Funk’s expert
opinion was based on a reasonable medical probability and, therefore, probative
evidence that supports the trial court’s intervening cause finding, we cannot
say that the trial court’s determination that this pre-syncopal
episode was an intervening cause of Neufeld’s injuries was so against the great
weight and preponderance of the evidence as to be clearly wrong or unjust.  As such, we find the evidence supporting the
trial court’s finding that Hudnall was not negligent
because Hudnall’s pre-syncopal
episode was an intervening cause of Neufeld’s injuries is factually sufficient.

            Review
of Neufeld’s challenge to the factual sufficiency of the evidence supporting
the trial court’s finding that Lone Star was not negligent depends on the type
of claim Neufeld asserted against Lone Star. 
A liberal construction of Neufeld’s petition reveals that Neufeld asserted
a claim that Lone Star was liable for its negligent hiring and retention of its
employee, Hudnall. 
According to Neufeld, Lone Star was directly negligent because it hired
and retained Hudnall in a position that required that
he operate motor vehicles near the public with knowledge that Hudnall had a history of low blood pressure and
diabetes.  

            An
employer who negligently hires an incompetent or unfit individual may be
directly liable to a third party whose injury was proximately caused by the employee's
negligent or intentional act.  See Verinakis v. Med.
Profiles, Inc., 987 S.W.2d 90, 97 (Tex.App.--Houston
[14th Dist.] 1998, pet. denied). 
A claim of negligent hiring and retention is based on an employer's
direct negligence instead of the employer's vicarious liability for the torts
of its employees.  Id.  To prevail in a negligence action, the
plaintiff must prove: (1) a legal duty owed to the plaintiff, (2) a breach of
that duty by the defendant, and (3) damages proximately caused by the
breach.  Greater
Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  Both the duty and proximate cause elements
required to establish a claim of negligent hiring or retention are premised on foreseeability.  See Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 659
(Tex. 1999); CoTemp, Inc. v. Houston West
Corp., 222 S.W.3d 487, 492 (Tex.App.--Houston
[14th Dist.] 2007, no pet.). 
Thus, liability under the doctrine of negligent hiring or retention is based
on the employer's negligence in hiring or retaining an incompetent servant whom
the master knows, or by the exercise of reasonable care should have known, was
incompetent or unfit, thereby creating an unreasonable risk of harm to
others.  See Houser v. Smith,
968 S.W.2d 542, 546 (Tex.App.--Austin
1998, no pet.).

            There
is no dispute that, at the time of the accident, Hudnall
was acting in the course and scope of his employment with Lone Star.  The key factual issue in establishing Lone
Star’s liability for negligently hiring and retaining Hudnall
is whether the accident was foreseeable. 
The record reflects that, when it hired Hudnall,
Hudnall informed Lone Star that he was on medication
for diabetes and low blood pressure. 
From this fact, Neufeld contends that Lone Star should have foreseen
that Hudnall could experience dizziness or loss of
consciousness while operating a motor vehicle in the course and scope of his
employment.[3]  However, the General Manager of Lone Star
testified that, at the time of Hudnall’s hiring, Hudnall indicated that he did not think that his medical
condition would impact his ability to drive nor endanger customers, and, in the
approximate year and a half that Hudnall worked for
Lone Star, Hudnall had not notified Lone Star of any
health problems or any loss of consciousness or blackouts.  In addition, Hudnall
testified that the only time he had experienced fainting spells or weakness was
before he was diagnosed with diabetes and started on medication, and that those
issues would have occurred sometime in 2001 or 2002, which would have been five
to six years before the accident in the present case.  Thus, considering all the evidence, we do not
find the evidence to be so weak or the finding that Lone Star was not negligent
in hiring and retaining Hudnall to be so against the
great weight and preponderance of the evidence that it is clearly wrong and
unjust.  See Dupree, 219 S.W.3d at 616. 
Thus, we conclude that the evidence was sufficient to support the trial
court’s finding that Lone Star was not negligent and did not proximately cause
Neufeld’s injuries.

            The
other finding that Neufeld’s argument fairly challenges is the sufficiency of
the evidence supporting the trial court’s determination that Lone Star is not
liable under the theory of premises liability. 
Neufeld points to evidence that Lone Star posted no warning signs on its
premises, failed to warn patrons of any unsafe areas, and Hudnall’s
testimony that the auction lot was “controlled chaos” as evidence that Lone
Star was aware of a dangerous condition on the premises of which it failed to
warn business invitees.

            To
succeed in a premises liability suit, an invitee plaintiff must prove that (1)
the defendant had actual or constructive knowledge of some condition on the
premises, (2) the condition posed an unreasonable risk of harm, (3) the
defendant failed to exercise reasonable care to eliminate or reduce the risk of
that harm, and (4) the defendant’s failure to use such care proximately caused
the invitee’s injury.  Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998).  The mere fact that an injury occurred on the
premises is not of itself evidence of negligence because almost any activity
involves some risk of harm.  Thoreson
v. Thompson, 431 S.W.2d 341, 344 (Tex. 1968).  Additionally, when a risk is open and obvious
and an invitee knows or is charged with knowledge of the risk, the premises
owner owes the invitee no duty to warn of the risk.  Summers v. Fort Crockett
Hotel, Ltd., 902 S.W.2d 20, 28 (Tex.App.—Houston
[1st Dist.] 1995, writ denied).

            In
the present case, it is clear that Lone Star was aware that vehicles were being
moved to the auction floor; however, there is no evidence that it knew or had
reason to know that Hudnall would pass out or
otherwise operate the vehicle in an unsafe manner.  Further, while the act of driving an
automobile poses a risk of harm, the evidence does not establish that the risk
of harm was unreasonable.  Even though
the manner in which the auction was conducted was described as “controlled
chaos,” there is no evidence that the manner that the auction was conducted on
September 19, 2007, was any different than for any other Lone Star auction, and
there was no evidence of prior accidents at Lone Star auctions that would give
rise to an inference that the manner in which Lone Star conducted its auctions
was unreasonably dangerous.  Because the
evidence does not establish that there was a condition on Lone Star’s premises
that posed an unreasonable risk of harm, Lone Star owed no duty to invitees,
such as Neufeld.  Further, the inherent
risk posed by operating a motor vehicle near pedestrians was an open and
obvious risk of which Neufeld should have been aware.  Thus, in the absence of evidence that Lone
Star had actual or constructive knowledge that Hudnall’s
driving a vehicle posed an unreasonable risk of harm to invitees, it owed no
duty to Neufeld that it could have breached. 
As discussed above, the great weight and preponderance of the evidence
does not establish that Lone Star possessed such actual or constructive
knowledge.  Consequently, we find the
evidence to be factually sufficient to support the trial court’s finding that “[n]o
dangerous condition existed on the premises operated by Lone Star, and Neufeld
was not injured as a result of any condition on the premises at the time the
accident in question occurred.”

Conclusion

            Concluding that the evidence is
factually sufficient to support the trial court’s findings of fact that were
fairly challenged by Neufeld’s appeal, we overrule Neufeld’s sole issue and
affirm the judgment of the trial court.

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice











[1] While Neufeld’s
petition alleged that Hudnall was an employee of Tejas Motors, during trial, Neufeld moved for a trial
amendment of his pleading to allege that Hudnall was
an employee of Lone Star.  The defendants
affirmatively stated that they had no objection to the trial amendment and
Neufeld’s motion was granted by the trial court.  Thus, Neufeld’s claim of negligent hiring or
retention was asserted against Lone Star.

 





[2] We note that all of these findings are more fairly
characterized as conclusions of law.  The
trial court’s only factual findings relevant to either of the challenged
“findings” are the findings that “Hudnall experienced
an episode which was an intervening cause [that] was unexpected, unanticipated[,] and unavoidable,” and that “[n]o dangerous
condition existed on the premises operated by Lone Star . . . .”  As to any other factual issues that are
necessary to the trial court’s judgment, we will imply those finding that are
supported by the evidence and that support the judgment.  See Dupree, 219
S.W.3d at 616.





[3] We note the logical
inconsistency of Neufeld’s arguments. 
Neufeld contends that Hudnall did not
experience a pre-syncopal episode that was an
intervening cause of Neufeld’s injuries, while also contending that Lone Star’s
knowledge of Hudnall’s medical history was enough
that Lone Star should have known that Hudnall would
experience dizziness and confusion (a pre-syncopal
episode) or pass out (syncope).








ontation between appellant and another man
at Garcia’s mother’s house.  During the
confrontation, appellant pointed a gun at Garcia and then fired a shot into the
air.   When the State asked Garcia if she
feared appellant, appellant objected that such testimony would be “effectively
victim impact evidence on extraneous [offenses].”  The trial court overruled the objection, and
Garcia testified that she did fear him.

Standard of Review

            Again,
we review a trial court’s admission or exclusion of evidence for an abuse of
discretion.  See Powell, 63 S.W.3d at 438.

 

Testimony of Victim of Extraneous
Offense, Victim Impact Testimony

            Garcia’s
testimony regarding unadjudicated extraneous offenses
was admitted without objection.  On
appeal, appellant limits his issue to a complaint regarding Garcia’s testimony
that she feared appellant. 

            Appellant
relies on Cantu v. State, 939 S.W.2d 627, 637 (Tex.Crim.App.
1996), for the proposition that it is error to admit victim impact testimony by
witnesses not named in the indictment for the offense for which an appellant is
being tried.  In Cantu, the
evidence showed that Cantu was involved in the murder of two teen-aged
girls.  Id. at
631.  During the punishment phase
of the capital murder trial relating to the murder of one of the victims, the
mother of the other victim testified as to the impact the murder of her
daughter had on her family.  Id. at 637. 
The Texas Court of Criminal Appeals noted that this other victim was not
the victim named in the indictment and, though evidence of the details
surrounding the other victim’s murder was admissible contextual evidence,
concluded that her mother’s testimony concerning her life and the impact her
death had on the family “serve[d] no other purpose than to inflame the jury.”  Id. 
It, nonetheless, found the error in admitting the evidence
harmless.  

            The
State responds by pointing to the distinction the Texas Court of Criminal
Appeals drew between Cantu and Roberts v. State, 220 S.W.3d 521,
531 (Tex.Crim.App. 2007).  At issue in Roberts was the
admissibility of testimony, during the punishment phase of Roberts’s capital
murder trial, of the victim of a robbery committed by Roberts a few years
earlier.  Id.  The court described “victim impact” evidence
as “evidence of the effect of an offense on people other than the victim.”  Id. (emphasis in original).  It concluded that the complained-of evidence
in Roberts was testimony from the
victim of the extraneous offense, not the offense for which he was being
tried, and specifically distinguished Cantu on this basis.  Id. 
The Roberts court ultimately concluded that the testimony was
admissible.  Id.

Analysis

            Here,
the challenged testimony is in the nature of the evidence examined in Roberts.  That is, the offense to which Garcia
testified was an extraneous offense; she was a victim of that offense, and
appellant was not being tried for that offense. 
Garcia’s testimony that she feared appellant, then, related solely to
the impact the extraneous offense had on
her and was not, therefore, within the definition of “victim impact”
evidence as defined by Roberts.  See
id.  Under Roberts, such
testimony is admissible and distinguishable from the testimony in Cantu;
the trial court did not abuse its discretion by admitting it.  We overrule appellant’s second issue.

Conclusion

            Having
overruled appellant’s two issues, we affirm the trial court’s judgment of
conviction and sentence.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Do
not publish.  











[1] Pursuant to the Texas Supreme Court’s docket
equalization efforts, this case was transferred to
this Court from the Austin Court of Appeals. 
See Tex. Gov’t Code Ann. § 73.001 (Vernon 2005).

 





[2]
See Tex.
Penal Code Ann.
§ 38.04(b)(2)(A) (Vernon Supp. 2009).

 





[3]
We, therefore, cannot
say that the decision in this case would have otherwise been inconsistent with
that of our sister court.  Nor do we read
Rule 41.3 as permitting our independent analysis of the issue in the absence of
inconsistent precedent from the transferee court.  Rule 41.3 requires us to apply the law of the
transferor court in this situation, and we do so.  We note only that this Court has not directly
addressed this issue in a non-transfer case.





[4]
See also Hernandez v. State, No. 03-07-00040-CR, 2010
Tex. App. LEXIS 851, *21–*22 (Tex.App.—Austin Feb. 5, 2010, no pet.) (mem. op., not designated
for publication) (quoting Montgomery in recognition that the standard of
review means that an appellate court should reverse the admissibility decision
only if it concludes that “by no reasonable perception of common experience can
it be concluded that proffered evidence has a tendency to make the existence of
a fact of consequence” other than character conformity “more or less probable
than it would otherwise be”) Ramirez v. State, No.
03-05-00219-CR, 2006 Tex.App. LEXIS 7557, at
*20–*21 (Tex.App.—Austin Aug.
25 2006, pet. ref’d) (mem.
op., not designated for publication) (extraneous offense admissible in trial
for aggravated robbery to rebut defensive theory challenging identity); Brown
v. State, No. 03-04-00639-CR, 2006 Tex.App. LEXIS 5163, *9–*10 (Tex.App.—Austin June 16 2006, no pet.)
(mem. op., not designated for publication) (even if error had been preserved, evidence of appellant’s
physical abuse of murder victim admissible to rebut defendant's claim of
accident and show element of intent to cause death, serious bodily injury, or
bodily injury).





[5]
Though the Texas Court of Criminal Appeals
discussion in Powell centered on Rule 403 primarily, its discussion of
the probative value of the evidence as it relates to the Rule 403’s balancing
test is instructive in that it also served to illuminate how and why the
evidence was probative of motive and, ultimately, identity.  It disapproved of the Waco Court’s conclusion
that the evidence of the firearm was only weakly probative of Powell’s motive,
emphasizing the facts that the only issue at trial was the issue of identity
and that Powell had introduced positive testimony controverting
the issue of identity.  Id. at 288–89.

 





[6]
The offense with which appellant was charged is
a third-degree felony.  See Tex. Penal Code Ann. § 38.04(b)(2)(A).  Ordinarily,
a third-degree felony is punishable by two to ten years in prison.  See id. at
§ 12.34(a) (Vernon Supp. 2009).  Here,
however, having been convicted of, at least, two prior felonies, Guerra was subject to a punishment of twenty-five to ninety-nine
years or life.  See id. at § 12.42(d) (Vernon Supp. 2009).