

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00048-CV

_____

CHARLES MATLOCK, INDIVIDUALLY AND D/B/A MATLOCK INSURANCE AGENCY, APPELLANT

V.

GERALD HILL AND MARTHA HILL, APPELLEE

_____

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2012-502885, Honorable William C. Sowder, Presiding

_____

June 30, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Like that recently addressed by our Supreme Court in *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660 (Tex. 2015), the primary issue before us is whether a life settlement is a security under the Texas Securities Act.[1]  Charles Matlock marketed life settlements on behalf of A&O Life Fund and induced Gerald and Martha Hill to purchase same via two different transactions.  The total sum the Hills paid for those interests was

---

[1] As explained in *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660 (Tex. 2015), a life settlement is a transaction wherein someone buys (at a discount from its payout value) an existing life insurance policy from the insured and then sells interests in the policy to third parties. *Id.* at 663.

$100,000.00. After A&O filed for chapter 11 bankruptcy protection and the Hills lost approximately 9/10th of the value of their investment, they sued Matlock individually and as Matlock Insurance Agency (his company's name). The causes of action sounded in fraud arising under both the Texas Securities Act and the common law. They sought damages, the rescission of the transactions, and attorney's fees. Trial was to the court which entered judgment for the Hills. Though the trial court did not specify in the decree the particular cause of action upon which it allowed recovery, it nonetheless awarded "Plaintiffs . . . actual damages from the Defendant in the sum of one hundred thousand dollars ($100,000.00), less the eleven thousand nine hundred and sixty dollars and thirty-six cents ($11,960.36) received by the Plaintiffs through different sources, which totals eighty-eight thousand thirty-nine dollars and sixty-four cents ($88,039.64)." Findings of fact and conclusions of law were subsequently executed by the trial court in effort to illustrate the grounds underlying its decision. Matlock appealed. We affirm.

*First Issue – Were the Life Settlements "Securities?"*

Through his first issue, Matlock argues that "[t]he Trial Court Conclusion of Law that the Life Settlements are Securities should be Reversed because the Trial Court Improperly Concluded that the Life Settlements constituted a Security under the TSA." The argument has various components. The first involves whether the life settlements at issue here were investment contracts. If they were not, then they were not securities, according to Matlock.

The actual tenor of his argument is somewhat unclear. At times he seems to be arguing that the omission of a finding or conclusion of law from the trial court's findings of fact and conclusions of law mandates reversal of the judgment. At other times he

2

seems to suggest that legal precedent deemed life settlement transactions something other than securities. So too can his argument be read as intimating that no evidence appears of record establishing one of the several elements to an investment contract or security. Then he appears to segue into another proposition concerning an exemption apparently found in the Securities Act. We will address each as we understand the argument to be, and the first involves whether life settlements have been held not to be securities.

Matlock cites us to the opinion in *Griffitts v. Life Partners, Inc.* No. 10-01-00271-CV, 2004 Tex. App. LEXIS 4844 (Tex. App.—Waco May 26, 2004, no pet.) (mem. op.) to support his contention that life settlements are not securities. To the extent that opinion stands for the general proposition asserted by Matlock, our Supreme Court in *Arnold*, recently debunked the contention. There, it concluded that a life settlement may be an investment contract (and therefore a security) if it satisfies the elements or definition of an investment contract. *Life Partner's, Inc. v. Arnold*, 464 S.W.3d at 667 (defining the elements of an investment contract and then stating that upon "[a]pplying this definition to the undisputed material facts, we conclude that Life Partners' life settlement agreements are 'investment contracts' and thus 'securities' under the Texas Securities Act.").

As for the matter of an exemption, Matlock cites us to the definition of a security appearing in art. 581-4(a) of the Texas Civil Statutes. It defines the terms as

> any limited partner interest in a limited partnership, share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument

3

representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not.  The term applies regardless of whether the "security" or "securities" are evidenced by a written instrument.  *Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been duly filed with the Department as now or hereafter required by law.*

TEX. REV. CIVIL STAT. ANN. art. 581-4(a) (West 2010) (emphasis added).  Allegedly, the life settlement in question fell within the penumbra of the passage we italicized.

Matlock does not question that A&O issued the life settlement, at bar.  Indeed, he said as much in his brief.  Yet, we were cited to no evidence of record indicating that A&O was "an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract [was] duly filed with the Department . . . ."  Nor did he direct us to evidence indicating that the A&O product was "duly filed with the Department as . . . required by law."  And, while we have no obligation to parse through the appellate record to find such evidence, *see Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 493 (Tex. App.—Austin 1994, no writ), our effort to do just that uncovered none.  This, therefore, precludes us from accepting the argument he proffered.  *See State v. Life Partners Holding, Inc.*, 459 S.W.3d 619, 621 (Tex. App.—Austin 2014), *affirmed, Life Partners, Inc. v. Arnold*, 464 S.W.3d 660 (Tex. 2015) (holding that the exclusion did not apply because Life Partners was not subject to the supervision or control of the Board of Insurance).

4

As for the presence of evidence establishing that the life settlements acquired by the Hills were not investment contracts, Matlock focuses on one element of the definition of that term as expressed in *Arnold*. The later mentioned four parts to the definition. It consists of

> (1) a contract, transaction, or scheme through which a person pays money (2) to participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominately due to the entrepreneurial or managerial, rather than merely ministerial or clerical, efforts of others, regardless of whether those efforts are made before or after the transaction.

*Life Partners, Inc. v. Arnold*, 464 S.W.3d at 667. The element purportedly missing here pertained to the failure or success of the enterprise being "at least predominately due to the entrepreneurial or managerial . . . efforts of others . . . ." As noted in *Arnold*, those efforts may occur "before or after the transaction" in question. *Id.* Furthermore, managerial efforts are characterized as "actions through which the person exercises oversight, discretion, and control over activities and transactions on which the anticipation of profits depends." *Id.* at 683. While the *Arnold* court did not explain what it meant by entrepreneurial efforts, it did give examples of them. They included 1) the identification of the insureds, 2) the negotiation of the discounts for the policy, 3) the evaluation of the policy terms and conditions, 4) the evaluation of the insured's health, 5) the acquisition of the policies, 6) the acquisition of others to buy interests in the life settlement, 7) the evaluation of the insured's life expectancy, and 8) the selection of a purchase price to yield sufficient profit. *Id.*

Here, we find evidence illustrating that A&O selected the policies and pooled them, that the "right" policies had to be acquired for the pool, that the life expectancies

5

of those insured under the policies had to be evaluated, and that the entity insuring the investor's payout (*i.e.* PCI) "is not going to continue to do business with A&O if A&O is not picking policies that make sense."[2] A&O's own offering statement, which was also admitted into evidence, 1) revealed criteria utilized by A&O in selecting what insurance policies to buy, 2) explained how there will be an "attempt to control risk through diversification of investments," 3) discussed the "investment process" that A&O's manager "may utilize in making investments," 4) disclosed that A&O would own the policies and death benefit, assume "the responsibility for future premium payments," and assume the "right to monitor the life and health of the insured," and 5) mentioned its intent to reinvest revenues from death benefits "to further the growth of" A&O. This, coupled with the evidence (provided by an expert witness) that "[i]f A&O is not there to pay and PCI is not there to pay, if they fail, the investor—the investment's going to fail for the Hills as well," is much more than a scintilla of evidence from which a fact finder could reasonably deduce that the failure or success of the enterprise and realization of the expected profits is predominately due to the entrepreneurial or managerial efforts of others. *See Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) (holding that a verdict has sufficient evidentiary support when the record has more than a scintilla of evidence upon which a reasonable fact finder could conclude that a vital fact has been established). Indeed, the evidence at bar was quite similar to that relied upon in *Arnold* to satisfy the definition of an investment contract.

As for the complaint about the absence of a specific finding of fact regarding the manner in which the life settlements were pooled, marketed and sold made them a

---

[2] PCI was an insurance company licensed to do business in Costa Rica. Apparently, A&O contracted with it to insure the investment return.

6

security, we note that such a statement appears in the trial court's conclusions of law.[3] Interestingly, Matlock cites us to no authority holding that the inclusion of relevant fact findings within conclusions of law requires reversal of a judgment. Indeed, to so hold would seem to place form over substance; and we are often cautioned against doing that by our Supreme Court. *See e.g. CMH Homes v. Perez*, 340 S.W.3d 444, 449 (Tex. 2011). More importantly, the remedy for defective or omitted findings is not reversal but rather remand for issuance of the requested findings. *Brooks v. Housing Auth. of City of El Paso*, 926 S.W.2d 316, 321 (Tex. App.—El Paso 1996, no writ). Here, Matlock simply prays for reversal.

Finally, even if we are to assume *arguendo* that the determination is actually a conclusion of law, it nonetheless implicates an element of the Hills' claim for securities fraud. Thus, the omitted factual finding can be presumed given the evidence supporting its existence. *See Black v. Dallas Cty Child Welfare Unit,* 835 S.W.2d 626, 630 n. 10 (Tex. 1992) (stating that an "omitted finding, supported by the evidence, may be supplied by a presumption that it supports the judgment"); *Dupree v. Garden City Boxing Club, Inc.*, 219 S.W.3d 613, 616 (Tex. App.—Dallas 2007, no pet.) (stating the same); *see* Tex. R. Civ. P. 299 (stating that ". . . when one or more elements [of a ground for recovery] have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.").

*Second Issue – Constitutional Prohibitions*

---

[3] Matlock actually avers that: "[e]qually compelling is the absence of any finding of fact (specific or otherwise) that the alleged pooling, marketing, sale, and presence of a guarantee occurred in this case – and if it did – to such an extent that it would lead to a conclusion that a security somehow existed. The articulation of a Conclusion of Law adjudging same in the absence of any attendant finding of fact(s) also constitutes reversible error."

Next. Matlock argues that the ". . . alleged claims asserted against Defendants under the TSA (after the fact) would violate the retroactive proscription of the Texas Constitution." In other words, we cannot retroactively apply any determination that life settlements are securities, according to him. Yet, our time need not be spent on analyzing the matter for it was resolved in *Arnold*; the court applied its decision retroactively. It wrote that: 1) ". . . retroactive application of our holding furthers the operation and enforcement of the Securities Act"; 2) "in light of the decades of precedent on which we rely, the results impose no inequities on Life Partners"; and 3) "in response to Life Partners' constitutional concerns, we need only note that our decision merely interprets and applies a very old law, consistent with the manner in which other courts have interpreted and applied it for decades; it does not create a new one." *Life Partners, Inc. v. Arnold*, 464 S.W.3d at 685. It is not our place to disagree with it and hold otherwise.

Matlock next asserts that deeming life settlements to be securities would deprive him of property without due process. A like contention was made and rejected in *State v. Life Partners Holdings, Inc.*, 459 S.W.3d at 621-22 (refusing to find a due process violation after recognizing that no "binding" decision on the matter of whether life settlements could be securities had previously been rendered). More importantly, that decision was affirmed by the Supreme Court in *Life Partners, Inc. v. Arnold*. To reiterate the words of the Supreme Court uttered while considering "Life Partners' constitutional concerns," "we need only note that our decision merely interprets and applies a very old law, consistent with the manner in which other courts have interpreted and applied it for decades; it does not create a new one." *Life Partners, Inc. v. Arnold*,

8

464 S.W.3d at 685. Simply put, requiring one to follow existing law does not, in and of itself, offend notions of due process.

### Issue Three - Common Law Fraud/Statutory Fraud

Matlock's next complaints relate to the findings of common law fraud and his aiding and abetting others in the commission of that fraud. These specific contentions we need not address since they are not dispositive of the appeal.[4] We now explain why.

From the trial court's findings of fact and conclusions of law, one can reasonably infer that its decision to award damages was based upon both the commission of common law fraud and the violation of articles 581-12 and 581-33(A)(2) of the Texas Revised Civil Statutes.[5] Per the former, ". . . no person . . . shall, directly or through agents, offer for sale, sell or make a sale of any securities in this state without first being registered as in this Act provided" and "[n]o agent shall, in behalf of any dealer, sell, offer for sale, or make sale of any securities . . . unless registered as an agent for that particular registered dealer under the provisions of this Act." TEX. REV. CIV. STAT. ANN.

---

[4] Because we are not addressing Matlock's complaint about common law fraud, we need not address his issue concerning the admission of evidence to prove same.

[5] Such findings and conclusions included statements that: 1) "[a] person selling the type of financial vehicles involved in this case is required to be licensed to sell securities under Texas securities law"; 2) "[t]he financial vehicles in question in this case (life insurance settlements), based on the way they were pooled, marketed, sold and backed by a guarantee constituted securities under Texas securities law"; 3) "[i]n or about January 2007, Wahab [an A&O executive] told Defendant Matlock that the A&O life settlements which were then being sold to investors were legally considered as securities. Since Defendant Matlock was not registered to sell securities, it was decided that Defendant Matlock would no longer participate in efforts to sell those investment products"; 4) Matlock "failed to disclose [to the Hills] that he was not registered with the Texas State Securities Board - such that he was prohibited from selling A&O life settlements in Texas" when he sold the life settlements; 5) Matlock "failed to disclose that PCI, the issuer of the guaranty bonds, was not licensed with the Texas Department of Insurance"; and 6) Matlock "failed to disclose that the Texas Department of Insurance issued an Emergency Cease and Desist Order against PCI on November 6, 2006, wherein it barred PCI from engaging in the business of insurance in Texas, absent registration."

art. 581-12(A). One who violates that prohibition "is liable to the person buying the security . . . who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security." *Id.* art. 581-33(A)(1).

That Matlock had no license to sell securities was not questioned on appeal. His lack of a license coupled with his selling of such a security in the guise of a life settlement evinced a violation of art. 581-12(A) of the Texas Civil Statutes. So, the trial court had basis to award the Hills their damages or order the return of their $100,000.00 paid for the life settlements under art. 581-33(A)(1).

As for art. 581-33(A)(2), it provides that one "who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him . . . ." *Id.* art. 581-33(A)(2). Furthermore, the buyer "may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security." *Id.* The record is replete with evidence illustrating that Matlock informed the Hills of the secure nature of their investment and how that investment was secure because payment was guaranteed by the PCI bond. That bond was "a game changer," in his view. These representations were uttered via communications made in March of 2007 and thereafter. What he did not tell them though, was that PCI had been barred by the Texas Department of Insurance from conducting business in Texas as of November 2006. More importantly, Matlock knew of the bar before March of 2007.

Other evidence indicates that the offering documents describing the investment advertised that 95% of the funds received from the "bond subscription" would be

10

"invested by the Fund in accordance with the investment objectives." Yet, Matlock was receiving a 10% commission on the sales he made. Receiving 10% of what the buyer paid tends to contradict the representation that 95% of the buyer's money was being "invested." Yet, Matlock felt it unnecessary to inform the Hills of his commission rate.

Failing to disclose information about both PCI's inability to conduct business and Matlock's commission, at the very least, can reasonably be construed as an "omission to state a material fact necessary . . . to make the statements made . . . not misleading." Thus, the trial court also had basis to award the Hills their damages or order the return of their $100,000.00 paid for the life settlements under art. 581-33(A)(2).

Finally, Matlock does not attack the measure or amount of damages awarded by the trial court to the Hills. Consequently, the trial court's decision to award the damages it did has a legitimate basis distinct from any claim related to common law fraud. That, in turn, relieves us from having to determine if the Hills proved common law fraud.

*Issue Four – Attorney's Fees*

Matlock's final issue pertains to the attorney's fees awarded the Hills. He contends that his opponents failed to prove they were entitled to same. This argument must be rejected too.

The legislature permitted those pursuing recovery under art. 581-33(A)(1) to recover such fees if equitable under the circumstances. *See id.* art. 581-33(D)(7) (stating that "[o]n rescission or as a part of damages, a buyer . . . may also recover reasonable attorney's fees if the court finds that the recovery would be equitable in the circumstances"). So, the Hills were entitled to reasonable attorney's fees if the trial court deemed it equitable to award same under the circumstances.

Next, whether their recovery is equitable lies in the trial court's discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (in assessing whether attorney's fees were recoverable under the Declaratory Judgment Act and upon noting that the Act permitted the trial court to award "reasonable and necessary attorney's fees as are equitable and just," the court stated that "[m]atters of equity are addressed to the trial court's discretion"). And, so long as the trial court's decision comports with controlling rules or guidelines and is not arbitrary or capricious, we are prohibited from interfering with it. *See Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012) (stating that discretion is abused when the decision fails to comport with controlling rules and guidelines or is arbitrary and capricious).

Here, the trial court found that "[i]n or about January 2007, Wahab told . . . Matlock that the A&O life settlements which were then being sold to investors were legally considered as securities" and "[s]ince . . . Matlock was not registered to sell securities, it was decided that . . . Matlock would no longer participate in efforts to sell those investment products." These findings were not questioned on appeal. Despite his having this information and agreeing to forego their sale, he sold $100,000.00 worth of life settlements to the Hills. The latter were retired octogenarians at the time. In return for his efforts, he received a 10% commission even though investors were told that 95% of their subscription would be invested.

Several years earlier, Matlock had endeavored to sell different unregistered securities while not being lawfully permitted to do so. That resulted in the issuance by the Texas Securities Board of an order dated February 5, 2001 and directing him to "CEASE AND DESIST from selling securities or offering securities for sale in the State

of Texas until he is registered, with the Securities Commissioner or an exemption is available under the Texas Securities Act." Again, he was not registered when he resumed his statutorily prohibited efforts to sell securities and actually sold them to the Hills in 2007.

The foregoing are circumstances upon which the trial court could have reasonably concluded that it was equitable to award the Hills attorney's fees under art. 581-33(D)(7). *See* TEX. REV. CIV. STAT. ANN. 581-33, Comment—1977 Amendment (describing indicia to consider in deciding whether it is equitable to award attorney's fees). Its decision to award them, therefore, did not constitute an instance of abused discretion.

Next, Matlock attacks the reasonableness of the fees awarded. Though the Hills presented evidence illustrating that a reasonable fee would be $248,928.25, the trial court granted them only $125,000.00. In determining whether that award was reasonable, we initially consider the Hills statement that they were utilizing the lodestar method to calculate the fees. Use of that method obligates the requesting party to present, "at a minimum, evidence 'of the services performed, who performed them, and at what hourly rate, when they were performed, and how much time the work required.'" *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014), *quoting*, *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012).

According to the record here, two attorneys represented the Hills. Both submitted affidavits to support the request for fees. The multi-paged documents described 1) their educational background, 2) the hourly rate charged by each when involved in "security matters," 3) the range of hourly rates charged by others nationwide

13

in like matters, 4) the work performed by each attorney accompanied by the date on which it was done, and 5) the amount of time (or an estimate of same) devoted to each aspect of work performed. The time expended by each was then multiplied by their respective hourly rates, and those totals were added to form the $248,928.25 sought. We further note the nature of the case (*i.e* one involving security law), the number of exhibits proffered into evidence and their ofttimes lengthy page number. Taken together, the data before the trial court was of the ilk required by *Long* and *El Apple*. We need not decide whether it was enough to warrant recovery of $248,000.00 in fees, but we do conclude that it provided sufficient evidentiary basis to award $125,000.00 as a reasonable fee.

Matlock next broached the specter of segregation. That is, he suggests the "Plaintiff's [sic] Affidavit of Legal Fees fails to segregate fees between 'recoverable' and 'unrecoverable' as required." It is true that one seeking fees generally has the obligation to segregate fees which are recoverable from those which are not if the suit involves causes of action for which fees may and may not be recoverable. *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007). An exception to that obligation exists, though. As stated by our Supreme Court, "when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined . . . [the fees] need not be segregated." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006). That exemption applied here.

Via their live pleading, the Hills pursued causes of action sounding in both common law fraud and statutory securities fraud. And, as previously illustrated, attorney's fees may be recoverable when redressing the latter. They, however, are not

recoverable for prosecuting common law claims of fraud. *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 667 (Tex. 2009) (stating that "fees are not allowed for torts like fraud"). Furthermore, no effort was made by the Hills to segregate fees incurred in relation to the common law fraud matter versus those relating to the security law violations. This may be so because it would have been quite difficult to do that. In short, the claims were more than intertwined; rather, proving one effectively proved aspects of the other. Again, securities fraud could be established under art. 581-33(A)(2) of the Revised Civil Statutes by proving that the accused offered or sold "a security . . . by means of an *untrue statement of a material fact or an omission to state a material fact* necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2) (emphasis added). In turn, common law fraud could be established via evidence of "'*a material misrepresentation, which was false,* and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015), *quoting Formosa Plastics Corp. v. Presidio Eng'rs & Contr., Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (emphasis added). There is also one other way to prove common law fraud, and it involves the omission to disclose information. That is, common law fraud may also be established by proving that 1) the opponent *failed to disclose material facts* when he had a duty to do so, 2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, 3) the defendant was deliberately silent when it had a duty to speak, 4) by failing to disclose

15

the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, 5) the plaintiff relied on the defendant's nondisclosure, and 6) the plaintiff was injured as a result of acting without that knowledge. *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

As can be seen, proving both an art. 581-33(A)(2) violation and common law fraud required either a material misrepresentation or omission to disclose a material fact. And, the conduct deemed fraudulent by the Hills under either of those theories was often the same, *e.g.* the misrepresentations about or omissions related to the amount of payment from the buyer actually being invested and the guaranteed nature of the investment due to the PCI bond when PCI was barred from doing business in Texas. We conclude that this intimate interrelationship between the Hills' claims satisfied the test of *Gullo*. "[D]iscrete legal services advance[d] both a recoverable and unrecoverable claim [which were] . . . so intertwined . . . [that the fees] need not [have been] segregated." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d at 313-14.

Via his final argument, Matlock suggested that the award was improper because counsel were assisting other clients while prosecuting the case at bar. Assuming this were true, however, he cited no authority suggesting this to be a basis upon which to deny fees. Nor did he cite us to evidence of record establishing that the Hills' trial counsel not only represented others in claims against Matlock but also used the Hills suit to develop those claims.

Nonetheless, we did find of record indication that Matlock may have defrauded others via the improper sale of life settlements. Accompanying that evidence was other evidence indicating that he utilized the same sales technique or pitch in each instance.

16

This alone, though, does not prove that legal counsel were double-dipping, so to speak. Indeed, acts of fraud committed upon other life settlement buyers could well have been relevant in establishing the claims of the Hills. *See* TEX. R. EVID. 404(b)(2) (stating that evidence of other wrongs may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity or the like). We say this simply to note that proving other misconduct on the part of Matlock does not necessarily support the inference that counsel was performing unneeded work for the Hills. So too has he failed to cite us to anything of record suggesting that legal counsel, in assisting other clients, was performing unnecessary work for the Hills.

In sum, we overrule each issue presented by Matlock and affirm the judgment of the trial court.


Brian Quinn
Chief Justice

17